Town of Milton, Appellant, vs. Railroad Commission of Wisconsin, Respondent.

*November 15—December 9, 1924.*

*Public utilities: Valuation on purchase by municipality: Transfer price: Determination by railroad commission: Equipment economically scrapped: Property used by utility but owned by another.*

1. Where a public utility found it more economical to scrap its power plant and obtain power from an independent company whose wires had been carried through the district, and could have recouped its loss through increased rates over a period of time, the value of the scrapped plant is a proper item to be considered by the railroad commission in fixing the value of the entire utility on its sale to the plaintiff town.  p. 296.

2. Land purchased by one M., the original owner of the utility, for its use, and upon which part of the utility was located, and which was treated by the corporation, the public, and the taxing authority as land of the corporation to which M. conveyed the utility, constituted property "used and useful" for the purpose of the utility although M. had never conveyed title; and the railroad commission properly held that the land belonged to the corporation and included it in its valuation on condition that M. convey to the corporation, which was done. p. 297.

3. The commission, after finding that a deep well situated upon lands owned by M. was used and useful to a water utility, properly allowed as part of the transfer price the sum of $800 on condition that the purchaser town receive instruments necessary to insure the town the perpetual right to use the well.  p. 298.

Appeal from a judgment of the circuit court for Dane county: C. M. Davison, Judge. *Affirmed.*

This was an action brought to review a decision of the *Railroad Commission* determining the amount of money to be paid by the plaintiff as the purchase price of a public utility in the town of *Milton,* Rock county.  The case was tried before the court, resulting in judgment affirming the decision of the *Railroad Commission.*  The town appeals.

Milton v. Railroad Comm. 185 Wis. 294.

The errors assigned are: (1) The court erred in holding that the decision of the *Commission* respecting the discarded power-plant equipment was right; (2) the court erred in holding that the decision of the *Commission* was right ·in compelling plaintiff to purchase certain real estate not owned by the McGowan Company at the time plaintiff voted to buy.

For the appellant the cause was submitted on the brief of *Jeffris, Mouat, Oestreich, Avery & Wood* of Janesville.

For the respondent there was a brief by the *Attorney General, C. A. Erikson,* deputy attorney general, and *E. L. Wingert* of Madison, and oral argument by *Mr. Erikson.*

CROWNHART, J.   It appears that the public utility had originally produced its power by one 12-horse-power oil engine; one 50-horse-power oil engine; one 7½-kilowatt generator; one 20-kilowatt generator; and one storage battery with necessary appliances.   Afterwards high-power wires were carried through the district and it became more economical to scrap the property above mentioned and obtain power from these wires operated by an independent company.   It was impracticable to immediately recoup the loss by increased rates, and at the time the town voted to take over the property the loss sustained by the public utility from discarding the properties aforesaid amounted to $3,868.   This the *Commission* took into consideration in fixing the valuation of the plant.   There was no finding as to just what allowance was made on this account, but it was one of the elements considered by the *Commission* in fixing the valuation.

We think there can be no doubt that the public utility had a right to recoup its loss through its rates over a period of time.   The machinery and equipment were prudently purchased and prudently used at the time, but became uneconomical because of changed conditions.   The change made

by the public utility was for the benefit of the consumers. In the case of *Oshkosh W. W. Co. v. Railroad Comm.* 161 Wis. 122, 127, 152 N. W. 859, this court said:

"In the proper valuation of a public utility for condemnation or sale purposes certain main elements usually present in every case may legitimately be considered. These are the present value of its physical property; the present and prospective reasonable earnings of its business; the going value thereof; and the amount of money presently needed to put the plant in good condition. There may be other elements, but these are generally the essential ones. In determining the value of the physical property due regard should be had to the original cost thereof; the reproduction cost; the amount of depreciation; and the amount of obsolescence. The going value of a utility is that part of its value due to its having an existing established business. In fixing its amount the actual cost of establishing the utility in question as modified by what under all the circumstances ought to have been its reasonable cost, as well as the reasonable cost of establishing like enterprises under similar conditions, may be considered. The element of going value is usually one whose quantum is not easily subject to mathematical demonstration. That in a measure is true of all the other elements of value. And it is equally true that the elements of value spoken of, or others if there be any, may not in their aggregate represent the just value of the utility. Such value may be more or less than the aggregate of the sum of the elements found. And it may be that some elements that enter into the main elements of value above stated should be entirely eliminated in fixing the just value of the utility as an entity. Its value must be fixed as such."

So, here, the value of the property as an entity must be determined from many elements. The going value is made up in part from the standpoint of prudent investment. The obsolete machinery had been prudently purchased; the business of the company had been built up and extended through its use; the value of the property as an entity had been increased thereby; it was an element to be considered in fixing the going value of the utility. In *Waukesha G. & E. Co. v.*

*Railroad Comm.* 181 Wis. 281, 302, 194 N. W. 846, this court held:

"In determining the present fair value of a public utility operating under our public utility law, it is our view that justice as well as sound economic practice requires that controlling weight should be given in the valuation of the plant of a public utility to the investment cost where the investment has been prudently made."

The objection of the appellant was properly overruled by the trial court.

As to the second assignment of error, it appears that the public utility was originally operated by an individual, McGowan by name, but later he sold the public utility to a corporation. Part of the utility was located on land owned by him, and in the conveyance to the corporation this land was not actually conveyed to the corporation by deed, but after the transfer of the private property to the corporation the land was actually treated as the land of the corporation and was so understood to be held by the public generally and by the taxing authority. McGowan testified that the property was intended for the use of the corporation, and that the corporation had equitable title thereto. The property was actually "used and useful" for the purposes of the utility. Sub. (2), sec. 1797*m*—82, Stats. 1921. The *Commission* held that the land belonged to the corporation, and included it in its valuation of the property on condition that McGowan should convey the same to the corporation by deed, which he did.

Objection is made to the valuation of $800 allowed by the *Commission* for a well. On this point the *Commission* found as follows:

"The actual water supply is on land the title to which has never been transferred to the McGowan Water, Light and Power Company. It is really on that land which is residential land of Mr. McGowan. This well is used and useful to the water utility. It is true the water utility can sink

another well, but the present well is a deep one and adapted to the purposes for which it is used. It is said on the part of the company that they will make a proper lease after the property is transferred for its use, but it seems to us that this is not a proper and adequate way of treating the matter. If the right to perpetual use of the well is transferred to the town, it will have value and be useful property to them. Such use can be transferred without transferring Mr. McGowan's residential property. If so transferred, we think it would be proper to give it value of $800. If, however, when the property is transferred, the rights to the use of this well for water supply are not also transferred, there will be inconvenience and perhaps loss to the town. They will have to dig another well elsewhere or look for another source of supply. In the valuation which we have fixed for this property, we have included the amount of $600 for this well on the assumption that Mr. McGowan will execute the necessary legal papers to insure the town the perpetual right to use this well, not otherwise, however, interfering with the land of Mr. McGowan. In case the company is not able to make this transfer, then on account of the necessary loss to the town, the transfer price hereinafter fixed will be $1,200 less than the amount fixed in this award."

We think the *Commission* acted within its jurisdiction and made a proper disposition of the matter. The trial court so held. It is our opinion that the judgment of the circuit court should be affirmed.

*By the Court.*—The judgment of the circuit court is affirmed.