[No. 25098. *En Banc.* December 21, 1934.]

GUS ROBERTSON, *Appellant,* v. THE DEPARTMENT OF
PUBLIC WORKS *et al., Respondents.*[1]

*Yantis & Brodie* and *John M. Hickson,* for appellant.

*The Attorney General* and *Don Cary Smith, Assistant,* for respondent.

BLAKE, J.—Pursuant to chapter 166, Laws of 1933, p. 616, § 4 (Rem. 1934 Sup., § 6381-4 [P. C. § 234-13d]), plaintiff applied to the department of public works

[1]Reported in 39 P. (2d) 596.

for a permit to operate as a contract hauler on the Pacific highway between Portland and Seattle, and on the Olympic highway between Olympia and Aberdeen. After hearing had, the department entered an order which, in effect, denied the application to operate between Olympia and Aberdeen. Plaintiff petitioned the superior court of Thurston county for a writ of review. On the record, the superior court entered judgment affirming the order of the department of public works. Plaintiff appeals.

The pertinent facts are as follows: At all times herein mentioned, appellant was a resident of Portland, Oregon, where he operated a storage and transfer business. For some four years before the effective date of chapter 166, Laws of 1933, p. 613, he had operated as a contract hauler on certain highways of this state. His contracts were with some half-dozen firms, or companies, among which was Sears, Roebuck & Company. His contract with the latter called for the transportation of goods, wares and merchandise between Seattle and Portland, Seattle and Chehalis, Seattle and Aberdeen, Portland and Chehalis, and Portland and Aberdeen. None of his other contracts called for any haul to or from Aberdeen.

The Sears, Roebuck store at Aberdeen was almost wholly stocked from the Seattle house, although it does appear that, in June, 1933, eighty-three pounds of merchandise was shipped from Portland to Aberdeen. During the same period, there was an average of three trips a week from Seattle to Aberdeen, with an average load of approximately three tons. There was no back haul from Aberdeen. For some time prior to making his application, appellant had sublet the haul to Aberdeen. Appellant testified that, if the permit were granted, he intended to put on a truck of his own between Olympia and Aberdeen, to which he

would transfer the goods consigned to Aberdeen from Seattle or Portland. Thus, the empty truck would return from Aberdeen only to Olympia.

Appellant contends that, under these facts (his application having in all things conformed to the requirements of chap. 166, Laws 1933, p. 616, § 4, Rem. 1934 Sup., § 6381-4 [P. C. § 234-13d]), he was entitled to a permit as a matter of right. We know of no inherent right in one to the use of the highways for commercial purposes. The highways are primarily for the use of the public, and in the interest of the public the state may prohibit or regulate, in any way it sees fit, the use of the highways for gain. *Packard v. Banton,* 264 U. S. 140, 44 S. Ct. 257; *Stephenson v. Binford,* 287 U. S. 251, 53 S. Ct. 181, 87 A. L. R. 721. In the latter case, it is said:

"It is well established law that the highways of the state are public property; that their primary and preferred use is for private purposes; and that their use for purposes of gain is special and extraordinary, which, generally at least, the legislature may prohibit or condition as it sees fit."

The power of the state is limited only in that it cannot unreasonably burden interstate commerce under the guise of exercise of police power, nor discriminate against users in the same class. *Bradley v. Public Utilities Commission,* 289 U. S. 92, 53 S. Ct. 577, 85 A. L. R. 1131. In that case, it is said:

"The Commerce Clause is not violated by denial of the certificate to the appellant, if upon adequate evidence denial is deemed necessary to promote the public safety. . . . One argument is that the statute discriminates unlawfully against common carriers in favor of shippers who operate their own trucks. In dealing with the problem of safety of the highways, as in other problems of motor transportation, the State may adopt measures which favor vehicles used solely in the business of their owners, as distinguished from

those which are operated for hire by carriers who use the highways as their place of business."

Neither do such restrictions or regulations impair the obligation of contracts. *Sproles v. Binford,* 286 U. S. 374, 52 S. Ct. 581; *Stephenson v. Binford,* 287 U. S. 251, 53 S. Ct. 181, 87 A. L. R. 721. In the former case, it is said:

"Contracts which relate to the use of the highways must be deemed to have been made in contemplation of the regulatory authority of the State."

And in the latter case, the court said:

"While freedom of contract is the general rule, it is nevertheless not absolute but subject to a great variety of legitimate restraints, among which are such as are required for the safety and welfare of the state and its inhabitants. [Citing cases.] When the exercise of that freedom conflicts with the power and duty of the state to safeguard its property from injury and preserve it for those uses for which it was primarily designed, such freedom may be regulated and limited to the extent which reasonably may be necessary to carry the power and duty into effect."

Nor do such restrictions or regulations infringe the constitutional inhibition to the taking of property without due process of law. *Packard v. Banton,* 264 U. S. 140, 44 S. Ct. 257; *Sproles v. Binford,* 286 U. S. 374, 52 S. Ct. 581.

So, we at last come to the question of the reasonableness of the order of the department. For:

"When the subject lies within the police power of the State, debatable questions as to reasonableness are not for the courts but for the legislature, which is entitled to form its own judgment, and its action within its range of discretion cannot be set aside because compliance is burdensome." *Sproles v. Binford,* 286 U. S. 374, 52 S. Ct. 581.

While the regulation of motor vehicle transportation for gain is a legislative prerogative, exercise of the function is necessarily an administrative one. It requires expert knowledge and investigation, which neither the legislature nor the courts can acquire at first hand. Cognizant of the necessities of the situation, the legislature, having enacted appropriate laws for regulation of such traffic, has delegated to the department of public works the function of administering the law and regulating traffic within its purview.

The authority so conferred upon the department of public works is made subject to review by the courts. But the courts are concerned only with the reasonableness of the orders of the department, when made under authority delegated to it by the legislature. They will not disturb the order unless it is arbitrary or capricious. *State ex rel. Great Northern R. Co. v. Public Service Commission,* 76 Wash. 625, 137 Pac. 132; *State ex rel. United Auto Transportation Co. v. Department of Public Works,* 129 Wash. 5, 223 Pac. 1048. In the former case, the court said:

"Inquiries of this nature depend altogether upon expert evidence and, we might add, expert findings, and the state has conferred the power upon the commission to determine the merits of the controversy, and its findings should not be disturbed unless they show evidence of arbitrariness and disregard of the material rights of the parties to the controversy. Such decisions are peculiarly within the province of the commission to make, and 'its findings are fortified by presumptions of truth due to the judgments of a tribunal appointed by law and informed by experience.' *Interstate Commerce Commission v. Chicago, R. I. & P. R. Co.,* 218 U. S. 88."

Now, considering the evidence as we have narrated it in the light of the rules of law to which we have ad-

verted, we think it is clear that the order of the department does not impair the obligation of appellant's contract nor deprive appellant of his property without due process of law. Likewise, it is clear that the order, being an exercise of the police power, does not impinge the commerce clause of the constitution of the United States. The character of interstate transportation shown under the Sears, Roebuck & Company contract was not such as would economically warrant the maintenance of trucking service between Portland and Aberdeen. Were the application for a permit before the department for that service alone, it would be fully justified in denying the application in the interest of public safety. For it cannot be denied that, for every additional truck permitted on the highways, there is an added hazard to the traveling public.

Was the order arbitrary or capricious under the facts shown? We think not. It will be recalled that appellant, for some time prior to making application for the permit, had not himself done the hauling from Seattle to Aberdeen. He proposed, however, to put special equipment on between Olympia and Aberdeen, and transfer the load from Seattle at the former place. There was no back haul from Aberdeen. The department concluded from these facts that, present transportation facilities between Seattle and Aberdeen, and Olympia and Aberdeen, being adequate for all purposes, the granting of a permit to appellant would add an additional and unnecessary burden on the highway, with consequent increase in hazard to the traveling public. It is a conclusion about which reasonable minds might very well differ —a debatable question, the decision of which must be left to the legislature and those delegated by it to determine such questions. We do think, however, that the conclusion is grounded in substantial reason

—not fanciful, capricious or arbitrary.

Judgment affirmed.

MAIN, MITCHELL, GERAGHTY, MILLARD, and STEINERT, JJ., concur.

TOLMAN, J. (dissenting)—I am not particularly concerned about the rights of haulers by contract or otherwise, but I am deeply interested in the rights of the public to use the public highways freely for all lawful purposes.

The fundamental error of the majority, as I see it, consists of the assumption that the appellant was a common carrier or was doing a business affected with a public interest, and therefore his activities may be forbidden absolutely or regulated specially. This supposed foundation has no existence whatever. A permit was issued to the appellant to continue every activity in which he served two or more firms or persons, and his application was denied only as to the haul between Olympia and Aberdeen in which he served Sears, Roebuck & Company alone.

The fully established and wholly admitted fact that the appellant was serving a single employer, which the majority ignores and the force of which apparently is not appreciated, is absolutely vital, and must be held constantly in mind. Everything here said is predicated upon that fact and no other.

One other fact has some incidental bearing and should also be stated, and that is that there is not a word in the evidence or the findings made by the department as to the nature and condition of the traffic on the highway between Olympia and Aberdeen. No presumption may be indulged in to the effect that the highway is in any wise congested, overburdened or unsafe. There being no evidence or finding to the

contrary, the presumption obtains that the highway is safe and sufficient for all lawful operations.

Chapter 166, Laws of 1933, p. 613, as it affects contract haulers, is somewhat involved and elaborate in its terms, but for present purposes the following resume will, perhaps, be sufficient.

Section one (Rem. 1933 Sup., § 6381-1), in part, reads:

"The business of operating as a motor carrier of property for hire along the highways of this state is declared to be a business affected with the public interest. The rapid increase of motor carrier freight traffic, and the fact that under existing law many motor trucks are not effectively regulated, have increased the dangers and hazards on public highways and make it imperative that more stringent regulation should be employed to the end that the highways may be rendered safer for the use of the general public; that the wear of such highways may be reduced; that congestion of traffic on highways may be minimized; and that the use of the highways for the transportation of property for hire may be restricted to the extent required by the necessity of the general public. Wherefore, the legislature in the interest of the public safety and for the conservation of the highways and the preservation of the use thereof for the public, provides as follows:"

Then follow certain definitions, among which is:

"f. The term 'contract hauler' means every person owning, controlling, operating or managing any motor vehicle used in the business of transporting property for compensation, other than as a certified operator, over any public highway between fixed termini or over a regular route, not operating exclusively within the incorporated limits of any city or town:"

Section 3 (Rem. 1934 Sup., § 6381-3 [P. C. § 234-13c]) vests in the department power and authority to regulate contract haulers, to supervise and fix their rates, etc., and require the filing of reports, the purpose apparently being to give the department

power to intervene between the shipper and his hauler and say what shall be a fair rate and what shall be proper rules and regulations affecting the service.

Section 4 forbids contract hauling, except under permit issued by the department, provides that the department may issue permits when the applicant has complied with the conditions,

" . . . or for good cause shown to refuse to issue same, or to issue it for the partial exercise only of said privilege sought, and may attach to the exercise of the rights granted by said permit such terms and conditions as, in its judgment, will promote safety upon the highways and conservation of their use in the public interest. The department shall deny any application for a permit when the type of vehicle to be used is an unsafe vehicle to be operated upon the public highways, and when it is not shown that the applicant has complied with the provisions of this act and with the existing motor vehicle laws of the state of Washington." Rem. 1934 Sup., § 6381-4 [P. C. § 234-13d].

Section 5 (Rem. 1933 Sup., § 6381-5), provides that liability and property damage insurance shall be provided by the operator. Section 6 (Rem. 1934 Sup., § 6381-6 [P. C. § 234-13f]) is largely repetition of matters heretofore mentioned.

Section 7 (Rem. 1934 Sup., § 6381-7 [P. C. § 234-13g]) gives the department power to prescribe the form of applications and requires that a fee shall accompany each application. Section 8 (Rem. 1934 Sup., § 6381-8 [P. C. § 234-13h]) forbids the assignment of any permit.

Section 9 provides that the department may:

" . . . for good cause suspend or revoke such permit upon at least ten days' notice to the grantee and an opportunity to be heard." Rem. 1934 Sup., § 6381-9 [P. C. § 234-13i].

Section 10 (Rem. 1934 Sup., § 6381-10 [P. C. § 234-13j]) requires copies of all contracts to be filed with the department. Section 11 (Rem. 1934 Sup., § 6381-11 [P. C. § 234-13k]) fixes the hours of duty of drivers or operators. Section 12 (Rem. 1934 Sup., § 6381-12 [P. C. § 234-13l]) provides for complaints, hearings and review.

There are numerous other provisions contained in the act not here brought in question, and it is not necessary to further analyze it.

The purpose of this legislative act, as shown by the portions quoted, seems rather clearly to be to place upon contract haulers and haulers for hire some of the burdens generally recognized as applicable to common carriers, but from which private carriers have heretofore been largely exempt.

The act was recently passed upon by a Federal court, which sustained its general provisions. The question of whether or not a contract hauler is, under the act, a common carrier, does not appear to have been there directly decided, perhaps because the act does not require the operator to devote his property to the service of the public. *Deppman v. Murray,* 5 Fed. Sup. 661. That decision is not binding upon us, and I express no opinion upon its merits.

We have also passed upon some features of the act in *State ex rel. Scott v. Superior Court,* 173 Wash. 547, 24 P. (2d) 87. Neither of these cases has any bearing upon our present question.

We have here a very narrow subject. Whether one who contracts with two or more may so far trench upon the field occupied by common carriers as to be subject to all of the terms of the act, I do not now attempt to decide. As already indicated, so far as the appellant may serve more than one employer, his application has been granted, and we are here

concerned only with the particular service between Olympia and Aberdeen for a single employer, which the department has denied him the right to continue to perform, and with the reason or basis upon which the denial is founded.

If the definition of a contract hauler, contained in section one of the act, had been limited to cover only one who carries the goods or merchandise of several or many shippers at one and the same time in one and the same load and over the same route, or if the courts may construe the statute to have that meaning, then at least a plausible argument may be advanced to the effect that the words of the statute which say that such a business is affected with a public interest, are intended to and do mean that such a carrier is doing a business which partakes of the qualities of the business of a common carrier, so that the legislature might forbid the use of the public highways for such a purpose. But we have no such question here, and I make these suggestions, not as expressing my views or committing myself for the future, but only in the hope that they may possibly aid those charged with the duty of solving these perplexing questions.

Our highways are public highways, and are maintained for the use of the public without discrimination or favoritism. The employer is a vitally interested party, and in regulating the operator, by law or departmental rule, care must be used to do so in a way which will not deny the use of the highways for any legitimate purpose.

A producer, a manufacturer, or a merchant may drive his own truck (if it be a proper one) over the highways to obtain or to deliver his materials or merchandise, subject only to such general rules and regulations as are applicable to all like traffic, such as reasonable limitations as to speed, weight of the

vehicle, weight of the load, the character of the vehicle as it affects the highway itself and as it affects the safety of others, and all like matters. In the exercise of the police power, undoubtedly the state may, by such rules, protect its highways and insure, so far as possible, the safety of all upon them, but the rules must be general in their application, so that anyone and everyone complying therewith may have free use of the highways, subject only to such police regulations.

What I have just said will, I think, be accepted by all, and if so, the application of it is as follows:

Sears, Roebuck & Company may operate its own truck between Olympia and Aberdeen freely each way, subject only to proper police regulations. It may hire any employee it may choose to drive that truck, or it may, at its pleasure, hire a truck and a driver for the same service under the same conditions. Whether it pays for the service by the hour, the day, the month, or by the hundredweight, is wholly immaterial.

The state may regulate all such operations by general rules applicable to all like use of the highways, but it may not arbitrarily forbid or prohibit any such uses. Here, Sears, Roebuck & Company has hired the appellant, on terms presumably satisfactory to it, to operate his own truck in carrying merchandise between Olympia and Aberdeen. There is no finding, suggestion or proof that the operation causes any undue congestion of traffic, or that traffic conditions are such that this service calls for anything other than our general traffic regulations which are already in force.

Appellant, as the employee of Sears, Roebuck & Company, asks for a permit, complies with the law, and pays the fee. The department makes no attempt

to regulate the proposed operations, does not find that regulation is required, but denies the application outright, thus denying to the employer the use of the highways to transport his goods through his hired employee upon terms mutually satisfactory to them.

This is a direct discrimination, not only against the appellant, but against his employer, denying the right to the use of the highways to each on the terms upon which all others freely use it. We cannot construe the act as authorizing any such result without rendering it unconstitutional.

This situation is not affected by the words of the statute declaring such use of the highways to be affected with a public interest. In the recent and much cited case of *Nebbia v. People of the State of New York,* 291 U. S. 502, 54 S. Ct. 505, 78 Law Ed. 940, the Federal supreme court said:

"The phrase 'affected with a public interest' can, in the nature of things, mean no more than that an industry, for adequate reason, is subject to control for the public good."

No private business can exist or be profitable except through the free use of the highways. To cut off ingress and egress by public highways would extinguish all business, and, hence, all businesses use the highways for profit in the same sense that the shipper who employs the appellant uses them. Appellant is but the employee, the agent or the servant of the shipper, and his use is that of his employer. All such use is affected with a public interest just so far as all use of the highways in carrying on private business is so affected.

But to return to the particular question here presented, it will not do to say that, because there is no available back freight, the operation is unnecessary and needless, or that the shipper can obtain adequate

service from others. The shipper is the sole judge of what is necessary or needful in his business, and if he sees advantage in a private contract for hauling, he has the absolute right to avail himself of that advantage.

Here, the shipper has a private contract already in effect, and the ruling of the department denies him the benefits of that contract and forces him to make some other contract, perhaps at greater cost to himself. Moreover, if this operator already selected can be denied the right, then any other operator hereafter selected may also be denied the right to haul the shipper's goods, and in the end we might come to a point where the operator's politics must please the department before a permit will be issued to him. We should not uphold a ruling which would lead to such results.

It is equally idle to attempt to forbid the supposed inefficiency of an empty return trip. Use of the highways (unless overcongested) cannot be limited to any efficiency rule. Much of our traffic is for pleasure only, and it is not for the state to say what is pleasure and what is profit, nor to discriminate against the profit there may be in pleasure or in favor of the pleasure there may be in profit. No doubt, in the very nature of things, a large percentage of freighting over our highways consists of loads but one way. Logging from the woods to mill or water, building materials from mill or factory to place of use, and all deliveries by merchants, wholesale or retail, and many other operations which suggest themselves, are all familiar examples. The subject need not be enlarged upon.

Nothing herein said is intended to reflect upon the right to refuse a permit to a person unfitted to drive a truck or without a driver's license, or a person who habitually violates the rules of the road. Matters of

that sort calling for the exercise of discretion by the department must be left for discussion when properly presented.

Notwithstanding the general declaration of policy as contained in the quoted portion of section one of the act, I find no language which, in terms, authorizes or directs the department to refuse a permit on the ground of the lack of necessity. It was by the legislature, no doubt, intended and expected that the general regulations contained would, in and of themselves, minimize congestion and otherwise tend to secure the declared objective. Had there been any purpose to base the right to a permit upon convenience and necessity, it would have been an easy and simple thing to have said so, in the direct and often approved language of the acts relating to common carriers which were already in effect.

Complete freedom of the highways is so old and well established a blessing that we have forgotten the days of the "Robber Barons" and toll roads, and yet, under an act like this, arbitrarily administered, the highways may be completely monopolized. If, through lack of interest, the people submit, then they may look to see the most sacred of their liberties taken from them one by one by more or less rapid encroachment.

I come now more directly to the law of the case as announced by the majority. The appellant was carrying on a perfectly legitimate business, in which the state had no right to interfere up to the time chapter 166 took effect. *Carlsen v. Cooney*, 123 Wash. 441, 212 Pac. 575; *Davis & Banker v. Metcalf*, 131 Wash. 141, 229 Pac. 2; *Big Bend Auto Freight v. Ogers*, 148 Wash. 521, 269 Pac. 802.

Chapter 166 does not, by its terms, forbid such operations, and if it attempts to convert what were private carriers into common carriers, its fiat cannot

change an operation for a single shipper under a special contract such as this, into a business affected with a public interest in any other or different sense than that in which all traffic on a highway is so affected with public interest, as we have already attempted to demonstrate.

The Federal supreme court in *Smith v. Cahoon*, 283 U. S. 553, 51 S. Ct. 582, said:

"On the face of the statute, the scheme was obviously one for the supervision and control of those carriers which, by reason of the nature of their undertaking or business, were subject to regulation by public authority in relation to rates and service. No separate scheme of regulation can be discerned in the terms of the Act with respect to those considerations of safety and proper operation affecting the use of highways which may appropriately relate to private carriers as well as to common carriers. All carriers within the Act, whether public or private, are put by the terms of the statute upon precisely the same footing. All must obtain certificates of public convenience and necessity upon like application and conditions. It is true that the statute does not in express terms demand that a private carrier shall constitute itself a common carrier, but the statute purports to subject all the carriers which are within the terms of its definition to the same obligations. Such a scheme of regulation of the business of a private carrier, such as the appellant, is manifestly beyond the power of the State. See *Michigan Pub. Util. Comm. v. Duke*, 266 U. S. 570, 576-578; *Frost Trucking Co. v. Railroad Comm.*, 271 U. S. 583, 592."

See, also, *Nebbia v. People of the State of New York, supra*.

I have examined with care the decisions upon which the majority relies, and find none which express a rule of law contrary to that which I have here tried to enunciate. Some of the decisions deal wholly with cases relating to common carriers. Some deal with

both common and private carriers, and language therein meant to apply to common carriers only cannot be applied to this case, which involves the rights of a private carrier only. General expressions as to the right of the state to exercise the police power over its highways I concur in heartily, but as I have already said, such powers must be exercised by general rules applicable alike to all similarly situated. To forbid the use of the highway to one qualified to use it, while permitting all others similarly situated to use it freely, is discriminatory and arbitrary action.

The recent case of *Wald Storage & Transfer Co. v. Smith*, 4 Fed. Sup. 61, decided by a Federal district court, while seemingly confined to contract carriers, only holds (1) that the state in the exercise of the police power may preserve the state's property in the roads from injury, and (2) that an order within the apparent scope of the railroad commission is presumptively valid, and the burden is on the complaining party to show arbitrary action. So far, I am in accord with the opinion, and I think that the decision goes no further; but if it does, it is not binding upon us and would not justify us in disregarding the rights recognized and made inviolate by our state and Federal constitutions.

Our Federal supreme court, in *Stephenson v. Binford*, 287 U. S. 251, 53 S. Ct. 181, 87 A. L. R. 721, affirmed a judgment sustaining an act relating to contract carriers which bears some similarity to the act here under consideration. The court passed upon only the constitutionality of the act in a broad sense, and not at all upon any administrative action such as we have here. It seems to have been assumed that all rules made by the administrative body would be general in their application, and no question of discrimination against a particular applicant for a permit

or of arbitrary action was raised or discussed. The court expressly limited its inquiry as follows:

"We confine our inquiry to the question whether, in the light of the broad general rule just stated, the statute may be construed and sustained as a constitutional exercise of the legislative power to regulate the use of the state highways. Provisions of the statute assailed on the ground that they are not highway regulations and violate the due process of law clause are: the requirement that the private contract carrier before engaging in business must obtain a permit upon considerations relating to the effect of their competition upon existing common carriers; the provision authorizing the railroad commission to fix the minimum rates of such private carriers operating in competition with common carriers, which shall not be less than the rates prescribed for common carriers for substantially the same service; and the requirement, as appellants interpret the statute, that such private carriers must furnish cargo insurance policies and bonds."

Since none of the questions decided in that case are here directly involved, and since, in my opinion, we should place our decision squarely upon the discriminatory and arbitrary action by the department, not in an attempt to regulate but in absolute denial of the right to use the highway, without a showing of any necessity therefor, the case presents nothing of interest here.

Moreover, in *Stephenson v. Binford, supra,* there is no modification or denial of that just and wholesome doctrine enunciated by the same august tribunal in an earlier case.

"Though the law itself be fair on its face and impartial in appearance, yet, if it is applied and administered by public authority with an evil eye and an unequal hand, so as practically to make unjust and illegal discriminations between persons in similar circumstances, material to their rights, the denial of equal justice is still within the prohibition of the Constitu-

tion." *Yick Wo v. Hopkins,* 118 U. S. 356, 6 S. Ct. 1064, 30 Law Ed. 220.

I do not suggest that the department has acted with an evil eye or intentionally with an unequal hand, but it seems evident that, in this instance, it did overlook the well-established law that even the police power must be administered impartially.

. Being convinced that the department misapplied the statute, under the facts of this case, it is my view that the judgment appealed from should be reversed.

BEALS, C. J., and HOLCOMB, J., concur with TOL-MAN, J.