[No. 25161.  Department One.  December 31, 1934.]

THE STATE OF WASHINGTON, *on the Relation of Winlock Water Company, Appellant,* v. THE DEPARTMENT OF PUBLIC WORKS *et al., Respondents.*[1]

*R. E. Ostrander,* for appellant.

*The Attorney General* and *Ferd J. Schaaf, Assistant,* for respondents.

MAIN, J.—This is an appeal by the Winlock Water Company from a judgment of the superior court sustaining the findings of the department of public works in fixing the fair value of its property for rate making purposes.

[1] Reported in 39 P. (2d) 603.

The town of Winlock had, according to the 1930 census, a population of 864, and on June 30, 1933, 256 customers were receiving service from the utility. The water company was incorporated in 1913, under the laws of this state, with a capital stock of twenty-five thousand dollars, consisting of two hundred fifty shares of common stock of the par value of one hundred dollars each. This was, on May 15, 1930, increased to twenty-five thousand dollars common stock and ten thousand dollars preferred stock. All of the capital stock, with the exception of a few qualifying shares, was owned by C. E. Leonard, the president of the corporation. After the corporation was formed, the town council of Winlock granted it a franchise for water service for a period of forty years. Prior to the incorporation of the utility, the president thereof, individually, had been supplying the inhabitants with water. After the corporation was formed, it took over the system which had been used prior to that time. The water had been obtained by pumping from wells.

In 1928, water was taken from Olequa creek, and was used by the inhabitants for approximately a year. Complaint as to the quality of the water was made, and the state health department condemned the use thereof, unless it was chlorinated. After this, the Olequa plant was disconnected and water since that time has been supplied from the wells.

At the time of the hearing, there were four wells in operation. In order to produce these, thirteen wells in all had been dug. Owing to the fact that Winlock is situated on the divide between the watersheds of the Chehalis and Lewis rivers, it was not always possible to get water in sufficient quantity by digging a particular well. Whether the well would produce

water in the quantity necessary, there was no way of determining until after it was dug.

The department, after a hearing, found that the fair value of the corporation's property used and useful in the public service, including working capital, material and supplies, as of June 30, 1933, was $34,800. The only witnesses at the hearing were the chief engineer of the department and one of his assistants who made the investigation as to the property, and C. E. Leonard, the president of the corporation, and his son H. W. Leonard, who was the superintendent of the plant and had charge of its operations.

The department refused to include the cost of the Olequa plant in the rate base, and the corporation says that this should have been included. Where the department of public works has made a finding upon a question of fact, such finding will not be disturbed by the court unless it bears evidence of having been arbitrarily reached and without a full and due consideration of all the controlling facts. *Puget Sound Electric Ry. v. Railroad Commission,* 65 Wash. 75, 117 Pac. 739, Ann. Cas. 1913B, 763; *State ex rel. Tacoma Eastern R. Co. v. Northern Pacific Ry. Co.,* 104 Wash. 405, 176 Pac. 539; *North Bend Stage Line v. Denney,* 153 Wash. 439, 279 Pac. 752; *Robertson v. Department of Public Works, ante* p. 133, 39 P. (2d) 596.

The appellant invokes the rule approved in *Southwestern Bell Telephone Co. v. Public Service Commission,* 262 U. S. 276, 43 S. Ct. 544, 31 A. L. R. 807, to the effect that the department is not the financial manager of the corporation, and was not empowered to substitute its judgment for that of the directors thereof, and cannot ignore items charged by the utility unless there is an abuse of discretion in that regard. Giving effect to that rule, it will not sustain the ap-

pellant's contention. The department, in the exercise of its judgment, had a right to pass upon the question of whether the appellant, in making the investment in the Olequa plant, acted prudently; and in the exercise of that judgment or discretion, when all the facts are considered pertaining to the construction of this plant, it is clear there is no evidence of arbitrariness on the part of the department in refusing to include the cost of the Olequa plant in the rate base.

This case does not fall within the rule of the cases of *Milton v. Railroad Commission*, 185 Wis. 294, 201 N. W. 381, and *Pacific Gas & Electric Co. v. San Francisco*, 265 U. S. 403, 44 S. Ct. 537, which are to the effect that machinery and equipment prudently purchased and used, but becoming uneconomical because of changed conditions, may be taken into consideration in determining the rate base of the utility where the consumers received some benefit from the change. While the Olequa plant had not been dismantled, it had been disconnected from the system in such a manner that it would take from eighteen to twenty-four hours to make a re-connection, and it therefore was of no value as a standby plant in case of an emergency arising by reason of fire.

It is next contended that the department should have given consideration to the cost of the nine unused wells in determining the rate base. The last of these wells, as already appears, was dug in 1923. A long period of time elapsed after the expenditure for these wells and the hearing. If the cost thereof had previously been taken care of out of the income of the property, clearly it should not be included. Upon this question, C. E. Leonard, the president of the corporation, testified that he did not know whether the cost thereof had been absorbed or not. H. W. Leonard

testified: "I presume the cost was paid out of the earnings."

When this testimony, the length of time after the wells were dug, and the size and manner of the operation of the property are considered, the record furnishes no evidence of arbitrariness on the part of the department in refusing to include in the rate base the nine unproducing wells. Whether, if they had been recently dug and the cost thereof not taken care of out of the earnings, the department should have included them in the rate base as a part of the cost of producing the four good wells, is a question not necessary here to determine, and upon which we express no opinion.

It is next contended that the department fixed the fair value of the appellant's property for rate making purposes at too low a figure. In this question is involved the cost of reproducing the property, less the depreciation and the allowance for material and supplies. In determining the fair value of the utility for rate making purposes, it was proper for the department to consider the original cost of construction, the cost of additions and betterments, and the cost of reproduction new. These matters are to be determined in the light of the facts of the particular case.

In *Los Angeles Gas & Electric Corp. v. Railroad Commission,* 289 U. S. 287, 53 S. Ct. 637, it was said:

"The weight to be given to actual cost, to historical cost, and to cost of reproduction new, is to be determined in the light of the facts of the particular case."

In this case, owing to the inadequacy of the corporation's records, the total cost of the utility could not be definitely determined, as stated in the findings. To determine the cost of reproduction new and the accrued depreciation, an engineer of the department was

sent to Winlock, where he spent approximately six weeks in the investigation of the property for the purpose of determining its value for rate making purposes. The finding of the department is based largely, if not entirely, upon the report of this engineer. The appellant offered no expert testimony to combat that of the department's engineer. We find nothing of substantial moment in the record to dispute the finding of the engineer as to the reproduction cost new. It is said by the appellant that the engineer used what is called the straight line method in determining depreciation, rather than the observation method. From the evidence, it appears that he, in fact, used both. The straight line method is a calculation based on age and on the estimated, assumed useful life of the elements entering into the property. It appears that, at times, during his investigation of the property, the engineer of the department used this method to assist him in determining the amount of depreciation.

The case of *McCardle v. Indianapolis Water Co.*, 272 U. S. 400, 47 S. Ct. 144, holds that the testimony of competent valuation engineers who examined the property and made estimates in respect to its condition is to be preferred to mere calculations based on averages and assumed probabilities. But that case does not hold that the straight line method is not evidence of depreciation if it is applied. There is nothing in the record that calls for disturbing the department's finding as to the amount of accrued depreciation.

The material and supplies to be included in the inventory of the physical property is a matter which rests largely in the judgment of the department, and the record presents no reason why that judgment should be disturbed.

The appellant makes the further contentions, (a) as to the department's finding relative to what the

future operative revenues of the property would be; and (b) as to the future operating expenses. It is sufficient to say that the record presents no facts bearing evidence that the department acted arbitrarily in fixing these amounts.

The judgment will be affirmed.

BEALS, C. J., TOLMAN, MILLARD, and GERAGHTY, JJ., concur.