[No. 25451.  *En Banc.*  May 22, 1935.]

THE STATE OF WASHINGTON, *on the Relation of Consolidated Freight Lines, Inc., Appellant, v.* E. K. MURRAY, *as Director of the Department of Public Works, et al.,* *Respondents.*[1]

*James P. Neal,* for appellant.

*The Attorney General* and *Don Cary Smith, Assistant,* for respondents Murray *et al.*

*A. J. Hensel,* for respondent Waterville Transfer Co.

BEALS, J.—Because of the construction by the United States government of the Grand Coulee dam, a greatly increased demand has arisen for passenger and freight transportation to and from the vicinity of the site where the building operations are being carried on. Several companies engaged in motor transportation applied to the department of public works for certificates authorizing them to function as certified carriers to Coulee City and the site of the dam.

An order having been entered granting two certificates of convenience and necessity—one to Cater's Spokane, Seattle-Tacoma Fast Motor Freight, a corporation, and the other to Waterville Transfer Company, a corporation—Consolidated Freight Lines, Inc., a corporation, applied to the superior court of Thurston county for a writ of review, contending that the order had been erroneously entered, to its prejudice. After a hearing, the superior court affirmed the order, stating in its memorandum opinion that, had the matter been presented as an original proposition, the court would have reached a result different from that reached by the department. From the order of the superior court affirming the department's order, Consolidated Freight Lines, Inc., has appealed to this court.

A brief statement of the situation in regard to the transportation facilities serving the vicinity of Coulee City is necessary to an understanding of the questions to be here determined. In the first place, it is, of course, true that the vast construction work engaged

in by the United States government in connection with the erection of the Coulee dam has suddenly brought about a condition requiring greatly increased facilities for transportation to the site of the dam and surrounding territory. Thousands of tons of freight must be carried from various points to or near the dam to provide material for its construction and to supply those engaged in the work with necessaries and conveniences for their support and comfort. A situation developed almost overnight which required a radical revision of existing transportation facilities and, of course, the granting of new certificates to those persons whom the department deemed entitled to receive the same.

Several persons engaged in the transportation business applied for orders extending existing certificates of convenience and necessity, with a view to connecting the Grand Coulee territory with Wenatchee, Puget sound and the Columbia river on the west, with Yakima on the south, and with Spokane on the east. Cater's Spokane, Seattle-Tacoma Fast Motor Freight, a corporation (which will hereinafter be referred to as Cater), applied for permission to render service between the territory in question and Spokane, on the one hand, and Puget sound points, on the other. Waterville Transfer Company (which will hereinafter be referred to as the Waterville Co.) applied for permission to render service between the dam and Coulee City, on the one hand, and Wenatchee, on the other, while Consolidated Freight Lines, Inc., appellant herein, a company engaged in very extensive freight carriage, its operations covering the states of Washington, Oregon, Idaho and Montana, and holding both intrastate and interstate certificates, applied for certificates authorizing it to serve both the Puget sound district and ports on the Columbia river, together with

Wenatchee and Yakima, in connection with the Grand Coulee country.

Appellant's trucks cover approximately thirty-five hundred miles of highway, of which a little less than one-third lie within the state of Washington. It maintains terminal facilities at Seattle, Tacoma, Wenatchee, Yakima and Spokane. It clearly appears that appellant is rendering efficient service, satisfactory to its customers and to the department of public works, and that it is undoubtedly able to take on additional responsibilities and measure up to them to the satisfaction of all concerned. Appellant owns three certificates granted by the department of public works of Washington, under which it was carrying freight into territory tributary to the Grand Coulee section. These certificates comprise the following:

Number 570, authorizing freight service between Puget sound and Wenatchee, by way of Blewett pass (or, on occasion, by way of Vantage); subject to limitations that no local service be furnished between certain points. Under this certificate, by an amendment, appellant was maintaining a through service between Seattle and Spokane, by way of Wenatchee, this service covering certain intermediate points.

Number 496, authorizing freight service between Spokane and Ephrata, and then to Wenatchee; also from Davenport to Ephrata. This certificate was also subject to some limitations.

Number 289, covering both intrastate and interstate service; the former between Yakima and Prosser, Yakima and Easton, and other points west and south. As to the interstate service, the certificate authorized carriage of freight between Yakima and Portland, Oregon, by way of two different highways.

Under these certificates, appellant was doing a very considerable and profitable business, carrying large

amounts of freight to Wenatchee from points west, and east from Wenatchee to Spokane and many other cities. By connection with another company at Davenport, Almira and neighboring points were furnished with freight service from Puget sound and the western part of the state. Much of the traffic moving from the west to the central part of the state goes through Wenatchee, which constitutes a natural gateway to eastbound transportation. The city is located about ninety miles from the site of the Coulee dam, and is a strategic point in establishing and maintaining motor transportation to and from the north central part of the state.

Appellant applied to the department for a certificate authorizing it to serve new territory in the Grand Coulee district and along the Sunset highway with a through freight service. Appellant argues that it is in a better position than any of its competitors to furnish an economical and efficient through service between points on the Columbia river and Puget sound on the west and the new territory sought to be served east of Wenatchee. Appellant calls attention to the fact that the establishment of such a service would not deprive any through carrier of freight originating upon its line, and would, on the other hand, eliminate transfers and extra handling by giving appellant long, through hauls from points of origin along its line on the west.

Cater maintains its headquarters in Spokane, and is the owner of certificate number 571, authorizing it to render through freight service between Spokane and Puget sound, by way of Vantage. This company applied for an extension of its certificate rights, which was granted by the department, it being authorized to establish freight service between Puget sound on the west and Coulee City and adjacent points on the east,

by way of the Sunset highway, no local service being authorized.

The Waterville Co. was organized a few years since by citizens of Waterville to function as a subsidiary to the Waterville Railway Company, which maintains transportation between Waterville and Douglas. The company owned certificate number 547, authorizing motor freight service between Waterville and Wenatchee, a distance of twenty-eight miles, and a portion of the shortest route between Wenatchee and Coulee City. During the year 1932, the company carried less than eight hundred tons of freight, a considerable portion of which originated on appellant's lines and was delivered by appellant to the Waterville Co. at Wenatchee. This company applied for a certificate authorizing it to extend its service by way of a line between Wenatchee and Coulee City and the site of the dam, a distance of about ninety-one miles. This application the department granted, subject to some limitation as to local service. Appellant's application for extension of its certificate privileges was denied.

Appellant assigns many errors upon the order of the department and contends that the superior court erred in entering judgment affirming the same, contending that the same is against the law and contrary to the facts which were before the court for consideration. Appellant contends that the extension of service allowed to Cater was unlawfully allowed, in that it gave the grantee rights in a territory which had theretofore been occupied by appellant, and that appellant had, under the statute, the preference right to serve this territory. By its order, the department indicated that it considered road use, and that freight traffic over the Blewett pass road should not be increased, to which portion of the order appellant excepts as without the evidence and without basis in fact.

Appellant makes other attacks upon the departmental order, in so far as it allowed Cater additional rights, contending that the order was arbitrary and capricious, against the preponderance of the testimony, and in violation of appellant's rights.

As to the granting of an additional certificate to the Waterville Co., appellant contends that this portion of the order was erroneous for practically the same reasons, and that it should have received the rights which were granted to its rival.

Appellant relies strongly upon the memorandum opinion of the trial court, in which the court stated that, had the matter before it been one of original inquiry, a different result would have been reached than that embodied in the order of the department. Under the law, the department of public works has very broad powers and a wide discretion in determining problems such as were resolved by it in the order to which appellant objects. On numerous occasions, we have, in referring to departmental orders of a similar nature, stated that they will not be disturbed by the courts unless clearly arbitrary or capricious or embodying a material disregard of legal rights.

With this principle we are in hearty accord, as the department of public works is the tribunal established by law for the purpose of deciding such questions, being granted a large authority and maintaining a staff of experts to aid by making investigations and preparing evidence proper to be considered in reaching its conclusions. The control of the department is vested in men selected with reference to their fitness for the work, and they devote all their time to the study of problems affecting the utilities of the state. That a judge of the superior court, or that this court, might be of the opinion that a different order should have been entered than that which the department did

enter, does not, of itself, warrant reversal of the department.

It is doubtless true that the power of the department of public works is derived from the law in force at the time of the hearing, and that departmental orders must be related to evidence contained in the record in connection with the proceeding in which the order is entered. It is also true, as argued by appellant, that the department is a creature of statute, and that its powers are circumscribed by legal limitations. In such a case as this, an applicant occupying appellant's position may have certain legal rights which the department must recognize, and if it fails to do so, the courts will unhesitatingly reverse its orders.

In the case at bar, considering first the applications of Cater, on one hand, and of appellant, on the other, it is evident that each applicant believed that it was entitled, as matter of right, to receive an authorization for extended service. It is also true that each applicant had perfectly good grounds upon which to base its application, and many reasonable and sound arguments to urge on its own behalf.

As between appellant and Cater, the proceeding before the department was, as we view it, essentially a controversy between competing transportation companies for the privilege of serving what was, as matter of fact, practically new territory. The almost overnight tremendous increase in population in and around Coulee City and the site of the dam created a situation which was, in its essence, new, and which required readjustment of transportation facilities to an extent which ordinarily would not have been necessary, save after many years growth and development. The condition is not exactly parallel to the opening up of transportation facilities through an en-

tirely new district, nor is it, on the other hand, parallel to the usual situations presented by a gradual increase in population which renders additional transportation facilities convenient and reasonably remunerative. The situation is, however, more nearly analogous to that presented by rival applications for the entry into new territory than for increased facilities in territory already served.

Manifestly, the new service was necessary, and while each of the applicants introduced evidence indicating that it was in a position to render better service, we are satisfied that either one could, with comparative ease, meet the requirements of the new community and satisfy all reasonable demands. As between appellant and Cater, we have examined the portions of the record pertinent to the rival claims of these two companies, and have with care read the order of the department authorizing Cater to furnish the extended service. Each applicant has many points in its favor, and we find little to the detriment of either, considered from all angles.

We are unable to find that appellant has, in this connection, any legal rights by way of prior service rendered to the territory concerned which the department violated. The department had to determine a question of considerable difficulty, and it finally made the award to appellant's competitor. It would be possible to discuss at considerable length in this opinion the respective contentions of the two parties, but we are unable to see any profit in such a lengthy resume of the respective contentions of the parties and of the ruling of the department. As above stated, we find no basis for appellant's contention that, in awarding the certificate to Cater, any of appellant's legal rights were violated. There remain only questions of fact and expediency, upon which the department passed in

the exercise of that discretion and judgment vested in it by law.

Undoubtedly, appellant's is the larger and more extensive business, but this of itself affords no reason for holding, as matter of law, that the department erred in awarding the privilege of rendering additional service to a rival concern. In so far as the order now under review affects appellant and Cater, we find in the order no arbitrary or capricious action or disregard of appellant's legal rights which calls for reversal of the judgment of the superior court affirming the same.

The action of the department in awarding certificate rights to the Waterville Co. must now be considered. Two main highways—the North Central and the Sunset—connect Spokane and Wenatchee. One main highway leads from the latter city west over Blewett and Snoqualmie passes into Seattle. The two highways east of Wenatchee are separated by an average distance of about thirty miles. At one point they approach to half that distance. Appellant has directly served communities on the North Central highway. As to freight originating on Puget sound, Portland and Yakima, it has served the Sunset highway through a joint rate agreement with Inland Motor Freight, a carrier operating out of Spokane, Davenport being the transfer point. Towns such as Almira, Wilbur and Creston, which lie within twenty miles of the site of the dam, have been served by appellant in connection with its associate on joint rates, as above stated. Appellant has served the district in and around Waterville through an agreement with the Waterville Co.

The operations of the Waterville Co. have been limited to carriage of freight between Waterville and Wenatchee, a distance of twenty-eight miles. The de-

108

partment, in awarding carriage privileges to the Waterville Co., found that the service proposed by that company "is more nearly in the nature of an extension of its present operation than is that of the Consolidated Freight Lines." With this finding, we are not in accord. Study of the geographical situation and the business and facilities of the two companies convinces us that, in awarding extension to the Waterville Co., the department acted arbitrarily and in disregard of appellant's rights, and that in this particular the record does not support the order now being reviewed. While, considered in connection with the operation of Cater, it cannot be held that the appellant had acquired preference rights in the new territory, still, taking the entire record into consideration, it must be held that it had a prior right to consideration as against the Waterville Co. It seems to us clear that the convenience of patrons of the new service will not be met by the proposed extension of the Waterville Co.'s certificate to the same extent as by extension of appellant's certificate.

In its order, the department stated that it was a matter of great difficulty to choose between the Waterville Co. and appellant, and expressly stated that it could not be reasonably contended that the site of the Coulee dam was territory contiguous to or adjoining that now served by the Waterville Co. The department, however, being of the opinion that the award of the business to the Waterville Co. would tend to conserve the highway between Wenatchee and Waterville, and upon other considerations, awarded the extension to the respondent carrier. In this connection, it is proper to note that the same freight tonnage passes over the road, no matter who carries it. The number of trucks would doubtless vary somewhat, but

the amount of freight, it would seem, would be the same.

The department properly stated that the conservation of highways has become of primary importance and must be considered in connection with the award of carrying privileges. This is both a statutory mandate and a principle resting in common sense. With this proposition, we are in complete accord, although in this instance we think that the matter of road conservation is not, in view of the burden which would be placed upon the highways, of sufficient importance to require refusal of the extension privilege to appellant.

Appellant criticizes the departmental order because the department referred therein to highway use; appellant contending that the record contains no evidence concerning this matter which supports that portion of the order referring thereto. The department of public works is an administrative body, forming an important branch of the state government. A portion of its duties is to study carefully the matter of transportation by motor vehicle between different portions of the state, and in this connection it must be assumed that those who make up the department will form an opinion as to the entire situation, and that the information which they have gained by study will be of use to them in making all such orders as that with which we are here concerned. The department, then, has the right to take departmental notice of the physical facts in connection with state highways, and it is entirely proper for the department to consider the matter of the conservation of such highways in allocating the use thereof.

We conclude that, in so far as the departmental order authorizes an extension of service by the Waterville Co., and denies any similar privilege to appellant, the order is erroneous. The judgment appealed from

is therefore reversed, and the proceeding remanded to the superior court with directions to refer the entire matter to the department of public works with instructions to vacate that portion of its order awarding to Waterville Transfer Company an extension of its existing certificate, and to proceed further in establishing service into the Grand Coulee territory as may seem to it advisable and not inconsistent with this opinion.

MILLARD, C. J., MAIN, HOLCOMB, TOLMAN, and STEINERT, JJ., concur.

GERAGHTY, J., concurs in the result.

BLAKE, J. (dissenting)—I dissent. By this decision, the court has taken over the supervision of transportation on the public highways—a duty which it is neither equipped nor authorized by law to perform. That function has, by legislative enactment, been vested in the department of public works. The courts are not warranted in interfering with the department's rulings, except in cases where they clearly appear to be arbitrary or capricious. This is not such a case.

The development of the Coulee dam project opened up an entirely new territory to carriers on the public highways. There was no service into the territory. Naturally, there would be competition among carriers operating in the vicinity for certificates of necessity to serve the new field. None had any inherent right to it. *Robertson v. Department of Public Works,* 180 Wash. 133, 39 P. (2d) 596. To say whether one or all of the applicants should be granted certificates, was peculiarly addressed to the discretionary power vested in the department. The complexity of the problem confronting the department is manifest from a perusal of the majority opinion.

It is apparent that the court's decision is predicated

on the theory that the department erroneously exercised its discretionary power. This is not sufficient to warrant the court's intervention. Where the legislature has vested discretionary power in a tribunal, the courts have no right to substitute their judgment for that of the tribunal in which the discretion is vested. *Dillon v. Whatcom County,* 12 Wash. 391, 41 Pac. 174.

MITCHELL, J., concurs with BLAKE, J.

