[No. 29525. Department Two. March 12, 1945.]

TAYLOR-EDWARDS WAREHOUSE & TRANSFER COMPANY, *Appellant*, v. THE DEPARTMENT OF PUBLIC SERVICE *et al., Respondents.*[1]

[1]Reported in 157 P. (2d) 309.

*Vanderveer, Bassett & Geisness,* for appellant.

*The Attorney General* and *R. Paul Tjossem, Assistant,* for respondent Department of Public Service.

*E. K. Murray,* for respondents Inter-City Auto Freight, Inc., *et al.*

*Thos. A. Williams, amicus curiae.*

BLAKE, J.—Since 1909, plaintiff has been engaged in warehousing and trucking in Seattle. A large portion of its business is the distribution of freight from rail cars at that point. About forty per cent of such freight is delivered to consignees in Seattle, where plaintiff has local cartage rights under a permit granted by the department of public service. "A large portion of the freight that comes out of these rail cars . . . goes on to other communities

. . . such as freight to Spokane, Bellingham, Portland, Tacoma, and smaller towns." A great deal of the freight is hauled by plaintiff on its regular route operations. Some of it is hauled through other carriers. Of intrastate freight between Seattle and Tacoma, however, plaintiff hauls "the largest portion." It has no interstate permit, nor had it any permit for local cartage in the city of Tacoma.

On April 13, 1944, plaintiff made application for the extension of its common carrier permit No. 3740 to authorize it to engage in local cartage of general commodities in the city of Tacoma. Pending hearing on the application, the department granted a temporary permit. Protests against the granting of the application were filed by several carriers in Tacoma already engaged in local cartage under permits from the department. At the hearing on plaintiff's application, several other Tacoma carriers intervened and joined in the protest against its allowance.

After hearing the evidence offered by plaintiff, the protestants and the interveners, the department made comprehensive findings of fact, from which it concluded:

"That the granting of the requested rights would not be in the interests of the shipping public and will tend to impair and jeopardize the stability and dependability of existing service in the area by enabling applicant to divert to itself local distribution business now enjoyed and relied upon by Tacoma carriers to sustain their operations."

An order denying plaintiff's application was accordingly entered. Plaintiff obtained a writ of review in the superior court for Thurston county, which, after a hearing on the record, entered judgment affirming the findings and the order of the department.

Plaintiff appeals, assigning as error: (1) That the statute under which the order was entered is unconstitutional in that it embraces an unlawful delegation of legislative power; (2) that the evidence does not support the findings of fact made by the department; (3) that the findings do not support the conclusions; and (4) that included in the costs charged against it was the expense incurred by the

department in preparing a transcript of the testimony taken at the hearing on the application.

*First.* The statute under which the validity of the departmental order must be determined is Rem. Supp. 1941, § 6382-5, which, in so far as pertinent, provides:

"No 'common carrier,' 'contract carrier,' or 'temporary carrier' shall hereafter operate for the transportation of property for compensation in this state without first obtaining from the Department a permit so to do under the provisions of this act. . . .

"Nothing contained in this act shall be construed to confer upon any person or persons the exclusive right or privilege of transporting property for compensation over the public highways of the State of Washington, but the Department may deny an application when it appears clearly, after public hearing, that the additional service would unreasonably congest the highways *or unreasonably endanger the stability and dependability of the service essential to the public needs.*

"The Department shall also consider the amount and type of service rendered in any area by any class of service *and may deny an application for permit or extension if it appears that the grant of such permit or extension would not be in the interest of the shipping public or would tend to impair the stability or dependability of existing service essential to the public needs or requirements.*" (Italics ours.)

As we understand appellant's contention, it is this: That the italicized portions of the statute set up standards for administrative guidance so vague and indefinite as to amount to a delegation of legislative power to the department.

■ We think appellant's position is without foundation. To begin with, it has no inherent right to move freight over the highways for compensation. *State ex rel. Scott v. Superior Court,* 173 Wash. 547, 24 P. (2d) 87; *Robertson v. Department of Public Works,* 180 Wash. 133, 39 P. (2d) 596; *Prater v. Department of Public Service,* 187 Wash. 335, 60 P. (2d) 238. (This is not to say, however, that a right to do so once acquired and exercised does not become a vested right.)

■ Plainly, the public policy designed to be subserved in regulating carriers for gain is twofold: (1) to conserve the highways and render them as safe as possible for public travel and (2) to stabilize service and rates in the transportation of passengers and freight. Of necessity, the latter objective can be achieved only by regulation, in some degree, of competition. (See *State ex rel. Krakenberger v. Department of Public Works*, 141 Wash. 168, 250 Pac. 1088.)

■ Whether transportation facilities in a given area are adequate to meet traffic demands, can be determined only by a survey of conditions as they exist. This is purely an administrative function. *John Benkart & Sons Co. v. Pennsylvania Public Utility Commission*, 137 Pa. Super. Ct. 13, 7 A. (2d) 588. Clearly, it is an objective which the legislature can achieve only through an administrative agency. The standard provided for the guidance of the department in determining the fact is, as we view it, as definite as may be. *State ex rel. Oregon R. & Nav. Co. v. Railroad Commission*, 52 Wash. 17, 100 Pac. 179; *State ex rel. Great Northern R. Co. v. Railroad Commission*, 52 Wash. 33, 100 Pac. 184; *State ex rel. Chicago M. & St. P. R. Co. v. Public Service Commission*, 94 Wash. 274, 162 Pac. 523. Certainly, it is as definite as the test of "convenience and necessity," which we have held to be a sufficient standard for the guidance of the department. *In re Sound Transit Co.*, 119 Wash. 684, 206 Pac. 931; *State ex rel. B. & M. Auto Freight v. Department of Public Works*, 124 Wash. 234, 214 Pac. 164; *State ex rel. United Auto Transp. Co. v. Department of Public Works*, 129 Wash. 5, 223 Pac. 1048.

The statute is not vulnerable to attack as a delegation of legislative authority.

*Second.* The department found: That there were as many as fifty or sixty operators actually furnishing local cartage service in the city of Tacoma; that one of these, the Inter City Auto Freight, Inc., operating approximately sixty units of equipment, conducted an intrastate and interstate service between Seattle and Tacoma and full local cartage operations in Tacoma in the transportation of gen-

eral freight, and that its operations were "as nearly identical to those of applicant as any two operations can be," and it had a daily average of between six and eight trucks which were idle and available for the handling of additional distribution business; that another, the Tacoma Moving & Storage Company, was conducting a local cartage service, that fifty to sixty per cent of its business consisted "of distribution service similar to that proposed in Tacoma by applicant," and the company operated eight trucks, two of which, on a daily average, were idle and available for the handling of additional distribution service; that still another, the Cooney Transfer & Storage Company, conducted similar operations, and that it had twenty-four pieces of equipment, three units of which were "classed as idle and so registered with the Office of Defense Transportation."

Findings of similar import were made with respect to two other companies, one of which operated twenty-one pieces of equipment and the other, nine.

■■ That these findings are supported by the evidence, is not open to dispute; so it would appear that the shipping public of Tacoma is afforded in abundance the type of service the appellant would offer if its application were granted. But, in addition, we think it is clear from the evidence that appellant's application is prompted primarily to subserve its own convenience and interest. There is no evidence of any demand, or even desire, on the part of the shipping public in the area for any additional service of the character appellant would give.

*Third.* From the foregoing summary, it is apparent, we think, that the conclusions of the department—"that the granting of the requested rights would not be in the interests of the shipping public and will tend to impair and jeopardize the stability and dependability of existing service in the area"—are amply supported by the evidence and the findings. In any event, it cannot be said that the department, in denying appellant's application, acted arbitrarily, capriciously, or upon a fundamentally wrong basis.

"Unless we can say that the order of the commission is wrong in the sense that its discretion has been arbitrarily

exercised, we must, under well settled rules, say that it is not to be overcome by judicial decree. To do so would be but to substitute our own will for that of the commission, and in so doing we would in all probability trench upon some equities while declaring others." *State ex rel. Tacoma Eastern R. Co. v. Northern Pac. R. Co.*, 104 Wash. 405, 413, 176 Pac. 539.

■ *Fourth.* The statute, Rem. Rev. Stat. (Sup.), § 10428 [P. C. § 5613], provides:

"The reasonable cost of preparing the transcript of testimony taken before the department shall be assessable as part of the statutory court costs . . ."

Appellant urges that costs should not be allowed for the preparation of the transcript of the testimony, because it had been prepared by the department for its own convenience before it rendered its decision; consequently, no additional expense was incurred when the writ of review was sued out. No such limitation on the department's right to recover the cost of the transcript can be discerned in the statute.

Judgment affirmed.

BEALS, C. J., ROBINSON, SIMPSON, and MALLERY, JJ., concur.