[No. 37111.   Department Two.   June 10, 1965.]

THE STATE OF WASHINGTON, *on the Relation of Pacific Northwest Bell Telephone Company, Respondent and Cross-appellant,* v. WASHINGTON UTILITIES AND TRANSPORTATION COMMISSION *et al., Appellants.*

THE STATE OF WASHINGTON, *on the Relation of West Coast Telephone Company, Appellant,* v. WASHINGTON UTILITIES AND TRANSPORTATION COMMISSION *et al., Appellants,* PACIFIC NORTHWEST BELL TELEPHONE COMPANY, *Respondent and Cross-appellant.**

*Reported in 403 P.2d 73.

*The Attorney General* and *Frank P. Hayes, Assistant,* for appellant Washington Utilities and Transportation Commission.

*Williams & Novack,* by *Parker Williams* and *Charles de Y. Elkus,* for appellant West Coast Telephone Company.

*Daniel W. Gaiser* (of *Gaiser & Powell*) (*John Robert Jones;* of counsel), for appellant General Telephone Company of the Northwest.

*John N. Rupp* and *Donald D. MacLean,* for respondent and cross-appellant.

DONWORTH, J.—This case involves four separate appeals taken by three public utilities and by the Washington Utilities and Transportation Commission (herein called the Commission) from the decree of the Superior Court for Thurston County, entered in two proceedings (consolidated by stipulation), which were instituted to review an order of the Commission. The order of the Commission related to the method of determining the division of revenue derived from intrastate interchanged toll traffic between two independent telephone companies and the Pacific Northwest Bell Telephone Company (herein called Pacific or Bell). There were other issues raised as to the correctness of the

Commission's order which will be discussed later in this opinion.

The public utilities referred to are Pacific and General Telephone Company of the Northwest (herein called General) and West Coast Telephone Company (herein called West Coast). In the review proceeding in the superior court instituted by Pacific, the respondents were the Commission, General, and West Coast, each of whom is also appealing from certain portions of the superior court's decree. In the review proceeding instituted by West Coast, the respondents were Pacific and the Commission, who are likewise appellants in this court.

The particular issues involved as between the respective parties before us in this court, as well as the disposition thereof by the superior court, will be stated later in this opinion.

The order entered by the Commission (which was reviewed by the superior court) is reported in 42 P.U.R.3d 65, and a copy is attached as an appendix to the Commission's opening brief. It is 30 pages in length and contains a very comprehensive statement of the issues and of the testimony and exhibits presented to the Commission and its findings of fact, conclusions of law, and order. For convenience, this document will be referred to as the Commission's findings or order.

The record before the Commission contained 1,723 pages of testimony and oral argument, and 44 exhibits, some of which consist of many pages. The hearings consumed 12 days.

Before discussing the respective assignments of error made by the several appellants, we must first consider what precisely the function of the courts is in reviewing such orders of the Commission.

In *State ex rel. Pacific Tel. & Tel. Co. v. Department of Pub. Serv.*, 19 Wn.2d 200, 217, 142 P.2d 498 (1943), this court had occasion to discuss this question at considerable length. After citing and discussing a number of decisions

of this and other courts of last resort, we stated the rule which is applicable here as follows:

In the case at bar, it was the province of the trial court to review the departmental orders before it and determine whether or not the department (1) had correctly followed the statutes as to matters of procedure, (2) had failed to grant respondent a fair hearing, (3) in making its findings and orders, had acted arbitrarily or capriciously, or (4) had violated rights secured to respondent by the constitution of the United States or the constitution of the state of Washington, or, as so often stated in our decisions, had, in reaching its results, proceeded upon a fundamentally wrong basis.

The trial court was bound by no conclusion of the department as to any question of law, always observing the rule that the burden of proof rested upon the party attacking the order. *State ex rel. Kitsap County Transporation Co. v. King County,* 3 Wn. (2d) 392, 101 P. (2d) 327; *State ex rel. Case v. Public Service Commission,* 298 Mo. 303, 249 S. W. 955; *Clear Creek Oil & Gas Co. v. Ft. Smith Spelter Co.,* 161 Ark. 12, 255 S. W. 903

This rule applies whether questions presented concern constitutional or statutory limitations. *Los Angeles Gas etc. Corp. v. Railroad Commission,* 289 U. S. 287, 304, 77 L. Ed. 1180, 53 S. Ct. 637.

Recently we had occasion to discuss the legal status of an order of this same Commission. In *City Sanitary Serv. v. Washington Util. & Transp. Comm'n,* 64 Wn.2d 739, 393 P.2d 952 (1964), we said:

(1) The Washington Utilities and Transportation Commission is an administrative agency, and as such is a fact-finding tribunal. *Herrett Trucking Co. v. Washington Public Ser. Comm.,* 58 Wn. (2d) 542, 364 P. (2d) 505; *State ex rel. Arrow Transp. Co. v. Washington Util. & Transp. Comm.,* 60 Wn. (2d) 825, 376 P. (2d) 433. Its findings of fact are by statute (RCW 81.04.430) made prima facie correct, and the burden is upon the one attacking a finding, conclusion or decision to show that it is unlawful, unsupported by material and substantial evidence, or is arbitrary or capricious. RCW 34.04.130 (6); *Herrett Trucking Co. v. Washington Public Ser. Comm.,* 61 Wn. (2d) 234, 377 P. (2d) 871. See also *State ex rel. Dawes v. Washington State Highway Comm.,* 63 Wn.2d 34, 385 P. (2d)

376. Courts should not and will not interfere with or substitute their judgment for a decision of the commission when it has properly acted within the sphere of its purpose, expertise, and competence. *Herrett Trucking Co. v. Washington Public Ser. Comm.*, 61 Wn. (2d) 234, 377 P. (2d) 871.

See, also, *State ex rel. Allied Daily Newspapers of Washington v. Washington Pub. Serv. Comm'n*, 44 Wn.2d 1, 265 P.2d 270 (1953).

■ On appeals in cases such as the present, we are required to determine whether the superior court erred in the entry of its judgment. In other words, we review *its* judgment entered pursuant to RCW 80.04.170, and not the findings and order of the Commission. *In re Foy*, 10 Wn.2d 317, 116 P.2d 545 (1941). Nevertheless, in order to perform our function, it is necessary for us to examine the evidence which was before the Commission and its findings and order, because RCW 80.04.190 provides that:

> The original transcript of the record and testimony filed in the superior court in any action to review an order of the commission, together with a transcript of the proceedings in the superior court, shall constitute the record on appeal to the supreme court.
>
> . . . .
>
> The general laws relating to appeals to the supreme court shall, so far as applicable and not in conflict with the provisions of this title, apply to appeals taken under the provisions of this title.

No additional evidence may be introduced in the superior court. *State ex rel. Country Club v. Department of Public Serv.*, 198 Wash. 37, 86 P.2d 1104 (1939).

Therefore, in order to state the issues which were presented to the superior court and which are likewise before us on this appeal, we shall endeavor, as briefly as possible, to quote from the Commission's findings of fact, conclusions of law, and order.

In 1960, two independent telephone companies (General and West Coast) each instituted a proceeding before the Commission against Pacific involving the appropriateness

of certain separation methods governing the division of toll revenues between each independent and Pacific derived from the interchange of intrastate long-distance telephone messages. The two proceedings were consolidated, and hearings were held in 1960 and 1961.

The Commission's order disposing of these proceedings (entered November 22, 1961) stated the principal problem as follows:

Representatives of Pacific have met frequently with officers of both complaining Independent companies in an effort to arrive at a mutually acceptable toll settlement agreement. Despite protracted negotiations, the parties have been unable to reach agreement upon some of the basic principles essential to a comprehensive toll settlement. We have been requested to assume jurisdiction under RCW 80.36.160 in order to make a reasonable and equitable division of toll revenues obtained from the interchange between the parties of intrastate toll telephone messages. RCW 80.36.160 reads in part as follows:

"In order to provide toll telephone service where no such service is available, or to promote the most expeditious handling or most direct routing of toll messages and conversations, or to prevent arbitrary or unreasonable practices which may result in the failure to utilize the toll facilities of all telephone companies equitably and effectively, the commission may . . . establish reasonable joint rates or charges by or over said lines and connections and just, reasonable, and equitable divisions thereof as between the companies participating therein. It may resort to all of these remedies simultaneously."

The parties agree that an equitable division of toll revenues will require that each Independent company be reimbursed for its proportionate share of the costs required to transmit the intrastate toll messages we are concerned with herein. In addition, each complainant Independent company is admittedly entitled to a reasonable return upon telephone facilities which it has devoted to intrastate toll service. Complainants and respondent were able to agree upon a great majority of the principles to be used in determining Independent company costs and investment. However, complete accord was not reached upon the procedures to be employed in "separating" or apportioning plant investment and related expenses among the various local and toll telephone services per-

formed by the complainants. As we will see, comprehensive separations procedures are an essential prerequisite to the calculation of Independent company costs.

Our primary concern in this proceeding is to examine separations procedures applicable to toll business which requires the use of Independent and Bell System facilities and which is the joint responsibility of both the Independents and the Bell System.

The Commission considered evidence from each of the three parties in the proceeding, after which it selected the Charleston Plan as the appropriate separation formula to be applied. We shall attempt to describe the operation and effect of the Charleston Plan, and the dispute between the parties and the Commission about the appropriateness of this formula.

The Charleston Plan allocates revenues on the basis of minutes-of-use of the respective equipment (technically called "plant") involved. The two independent companies approve this formula, whereas Pacific contends that the proper basis for allocation is message-minutes-miles.

In its findings, the Commission stated the issue as to the Charleston Plan to be as follows:

(A) Should Independent company exchange circuit plant, or plant devoted to toll and local services *within* separate exchanges, be apportioned between intrastate B-I business and other business solely on the basis of the number of minutes such plant is used for toll services, or should a mileage factor be employed which would give recognition to an alleged differential between the average length of the circuits actually utilized for providing toll services and the average length of the circuits utilized in providing other services. The application of a mileage factor to minutes of use would result in a more favorable settlement for respondent Pacific.

The minutes-of-use concept is an integral part of the Charleston Plan, which was adopted by the NARUC[1] primarily for use in jurisdictional separations. The Charleston Plan assumed that there is no differential between circuit miles utilized for toll services and circuit

---

[1] The National Association of Railroad and Utility Commissioners.

miles utilized for other services, such as local calling. Pacific contends that this assumption of mileage equality should not be applied to intrastate B-I toll settlements. Pacific asserts that a mileage differential exists at the intrastate level and that this differential should be determined by a mileage study.. Pacific has yielded to the use of the Charleston Plan for interstate B-I toll settlements, but insists upon the application of a mileage factor for intrastate B-I settlements. General and West Coast contend that the Charleston Plan is appropriate for both interstate and intrastate B-I settlements without modification.

After discussing at length the history of separation procedures and the contentions of the several parties regarding the Charleston Plan, the Commission announced its findings and conclusions:

We are in favor of simplification of separations procedures achieved by the introduction of the Charleston Plan. In our opinion, reasonable simplification of telephone separations procedures is beneficial both to the ratepayers and to the telephone companies involved. We do not favor the negation of this attempt to simplify separations procedures by the introduction of a complicated mileage factor, nor do we feel that the Charleston Plan should be taken apart and reassembled. In our opinion the Charleston Plan is a Gordian knot which cannot be unraveled or disassembled but must be cut away and abandoned if its precepts are to be substantially altered.

The Charleston Plan is also appropriate for intrastate separations because it is already in use for interstate B-I settlements. In keeping with our observations on the importance of uniformity in separations procedures, we are of the opinion that the features of the Charleston Plan should be extended to resolve the controversy at hand.

The use of the Charleston Plan in intrastate separations procedures provides the Independent companies with a recognized, practical procedure for making Independent company cost determinations. It is true that there is no way to effectively compare the monetary benefits which accrue, respectively, to Pacific and to the Independent companies under the Charleston Plan. In our view, many of the features of the Charleston Plan, and particularly

the assumption of a 1:1 mileage ratio, represent practical solutions to complicated separations problems. We agree with the court, in *Smith v. Illinois, supra,*[2] that ". . . . Extreme nicety is not required . . ." in separation procedures.

It is our opinion, and we so find, that "minutes of use" should be utilized in determining the apportionment of the exchange circuit plant of General and West Coast between state B-I business and other business. Moreover, we find that the proposed weighting of minutes of use with a mileage factor is without merit under the present uniform separation procedures unless such procedures are refined by a modification of existing categories.

In addition to the issue described above, the Commission, in its findings, referred to four other issues which were involved in the proceeding before it designated as (C), (D), (E), and (F). These were described as follows:

(C) Should certain dial-switching equipment, which was installed by the Independents to facilitate nationwide toll dialing, but which is activated only during the dialing of local calls, be assigned to toll operations or to exchange operations. The assignment of this equipment to toll would benefit the Independent companies by increasing the amount of investment and costs attributable to their toll operations, thus increasing proportionately the share of toll revenues to which these companies may be entitled.

All companies which participate in nationwide toll dialing must provide telephone plant which is suitable for seven-digit dialing, even though only five digits or less are required to complete local exchange switching. Complainant Independent companies both have a considerable number of smaller exchanges which could be served adequately with five-digit dialing. Additional dial switching equipment has been installed by these companies to absorb extra digits which are dialed in these exchanges where only five digits or less are required.

Pacific contends that since this digit-absorbing equipment is activated only during local switching, it should not be assigned directly to toll. Complainants assert that since extra digit-absorbing equipment is necessary to in-

---

²*Smith v. Illinois Bell Tel. Co.,* 282 U. S. 133, 75. L. Ed. 255, 51 Sup. Ct. 65 (1930).

sure the participation by small companies in the nation-wide seven-digit toll dialing system, and since the two-five numbering plan and the nationwide toll dialing system admittedly increase the efficiency of the national toll network, Independent exchange customers should not be required to bear the expense of installing and maintaining such equipment.

(D) Are complainants entitled to a rate of return on toll facilities which is equal to Pacific's earned rate of return on its total Washington operations, or are complainants entitled to some rate of return based upon the individual revenue requirements of each company. Strictly speaking, this issue is not a separations problem, but it is a factor in determining Independent company costs for participating in B-I toll business.

(E) Should certain West Coast intrastate toll traffic, referred to herein as point-of-connection traffic, be treated simply as B-I business, subject to the provisions of this order, or should such traffic be placed in a distinct category and made the subject of separate negotiations. Treating point-of-connection traffic as B-I business could result in a reduction of toll revenue for the West Coast Company. Both West Coast and General have point-of-connection traffic, but only in the case of West Coast is the volume sufficient to warrant raising this issue.

Point-of-connection traffic may be distinguished from ordinary B-I business in that it flows over an Independent company toll route under toll rates established by that company. Ordinarily, Bell System toll circuits are utilized for B-I business and toll rates are set by a Bell subsidiary such as Pacific. In one sense, point-of-connection traffic represents the reverse of ordinary B-I traffic, since it is the Independent Company and not the Bell System which controls the toll circuits between the Bell and the Independent company exchanges.

(F) Should the expense of a study made by West Coast in order to determine its costs for B-I settlement purposes be charged wholly to B-I toll, or assigned to general expenses. The assignment of such expenditures to toll would in effect result in Pacific bearing the full cost of West Coast's cost study, while an assignment to general expenses would spread the cost between the two companies. Although General takes no position on this issue, computations submitted by this company are based upon

Pacific's rather than upon West Coast's theory of assignment of cost.

In order to simplify the treatment of individual issues, we will summarize the more important aspects of this technically complicated field of telephone separations procedures. It will be shown (1) that the national telephone toll network is a single integrated communications system and that local and toll functions are supplementary, interdependent services; (2) that separations procedures, far from being static, are constantly subject to practical revisions, the effect of which is to increase proportionately the investment and expenses assigned to interstate toll service; (3) and that although separations procedures have been formulated at the interstate-intrastate or jurisdictional level, alterations of such procedures may have a substantial effect upon intrastate telephone rates.

Regarding the issue referred to as (C), the Commission's findings stated:

APPORTIONMENT OF OTHER TOLL DIAL SWITCHING EQUIPMENT (DIGIT ABSORBING EQUIPMENT)

Section 24.72 of the NARUC-FCC manual requires that toll dial switching equipment, including digit absorption equipment, be apportioned among various operations on the relative minutes of use of that equipment in each location. It is complainants' contention that that portion of local dial switching equipment necessary for absorbing unused digits in local dialing should be assigned wholly to B-I toll operations on the basis of toll minutes of use.

As a part of its uniform continental numbering plan, the Bell System has developed a customer toll dialing program which assigns to each primary telephone a distinctive ten-digit number. The first three digits of each number represent a code which selects one of numerous geographical areas. The next three digits select the central office which serves a particular telephone which a customer desires to reach. The remaining four digits identify a particular telephone within the exchange.

Depending upon the size of the exchange, only a portion of the last seven digits of any number may be required for local calls within a central office. In the case of the Independent companies involved in this proceeding, digit-absorbing equipment has been installed to ab-

sorb digits which are unnecessary for local calling within smaller exchanges. Both companies have assigned the extra cost of this particular equipment to central office equipment or other toll dialing switching equipment in exchanges where four or fewer digits are required for local dialing.

The Pacific company is technically correct when it states that digit-absorbing equipment is activated only during local dial switching, since this is the point at which it is necessary to absorb unnecessary digits. It is also true, however, that the assignment of a portion of complainants' digit-absorption equipment to toll is requested only because of the participation by Independents in the national continental numbering plan. It is because of this plan, which was designed to permit automation in the switching of long-haul toll traffic and ultimately to permit complete direct distance dialing that the additional expense was necessary. Furthermore, such equipment, when in use, absorbs digits which are provided solely for the benefit of the nationwide numbering plan, even though the dial digits absorbed are used for local switching. In our opinion, the additional expense of this equipment should not be borne by the exchange customers of General and West Coast.

We therefore find that digit-absorption equipment which has been provided by the Independent companies herein in order to participate in the nationwide numbering plan, and which is not essential for the completion of local calls, should be classified as Category 5, plant, and assigned to toll operations on the basis of toll minutes of use.

The issues designated as (D), (E), and (F) will be referred to later in this opinion.

The disposition made by the Commission in these proceedings is summarized in its ultimate findings, conclusions of law, and order, which are as follows:

ULTIMATE FINDINGS AND CONCLUSIONS OF LAW

Upon the basis of all of the evidence of record the Commission hereby enters the following findings and conclusions of law. Those portions of the preceding summary which pertain to these ultimate findings and conclusions are incorporated herein by reference.

1. Complainants and respondent are public service

companies subject to regulation by the Washington Utilities and Transportation Commission.

2. The Commission has jurisdiction under the provisions of RCW 80.36.160 to determine the issues raised by the complaints filed in these consolidated causes.

3. It is just, reasonable, and equitable to apportion the exchange circuit plant of complainants General and West Coast between intrastate B-I business and other business on the basis of relative minutes of use.

4. The minutes of use referred to in Finding No. 3 are defined in Paragraph 11.22(3) of the 1957 NARUC-FCC separations manual as minutes of holding time for the area under study for all telephone connections established within the various exchanges in providing the operation involved.

5. It is just, reasonable and equitable to apportion complainants' interexchange circuit plant between intrastate B-I business and other business on the basis of relative intrastate B-I conversation-minute-miles.[3]

6. It is just, reasonable and equitable to apportion complainants' local digit absorption equipment on the basis of the separations methods set forth in the 1959 edition of the USITA[4] separations manual in Paragraph 24.7 entitled "Other Toll Dial Switching Equipment-Category 5," excluding sub-paragraph 24.711.

7. The evidence regarding rate of return on toll investment is sufficient to justify the fixing of any particular percentage rate of return as being just, reasonable, and equitable.

8. There is justification in the record for permitting the parties to attempt to resolve the issue of fair rate of return by further negotiation for a reasonable period of time not to exceed 90 days.

9. The West Coast point-of-connection traffic discussed in this order is not B-I traffic in the strict sense of this term; therefore, such traffic should be classified as Independent company traffic, and made the subject of separate negotiations.

10. It is just, fair, and equitable to charge to "General Expenses" those expenses incurred in making cost studies for settlement purposes.

---

[3]On its appeal to this court, West Coast abandoned its assignment of error No. 1, in which it contended that the trial court erred in affirming this paragraph which rejected the Modified Phoenix Plan.

[4]United States Independent Telephone Association.

11. All motions or objections not otherwise disposed of during the course of the proceedings should be treated in accordance with the provisions of the above findings.

## ORDER

WHEREFORE, IT IS HEREBY ORDERED That complainants and respondent divide toll revenues obtained from the interchange of intrastate toll telephone messages in accordance with the provisions of the foregoing discussion and findings.

IT IS FURTHER ORDERED That complainants and respondent proceed with further negotiations regarding the rate of return to be allowed complainants on B-I intrastate operations for toll settlement purposes and to report the results of such negotiations to this Commission not more than 90 days from the effective date of this order.

IT IS FURTHER ORDERED That jurisdiction be retained in this cause to effectuate the provisions of this order.

## PROCEEDINGS IN THE SUPERIOR COURT

Having as briefly as possible described the proceedings before the Commission and its disposition of the various issues presented to it, we now consider the two proceedings brought in the superior court to review the Commission's order pursuant to RCW 80.04.170, which provides, in part:

Such cause shall be heard by the court without the intervention of a jury on the evidence and exhibits introduced before the commission and certified to by it. Upon such hearing the superior court shall enter judgment either affirming or setting aside or remanding for further action the findings or order of the commission under review. . . . In case such findings or order be set aside, or reversed and remanded, the court shall make specific findings based upon evidence in the record indicating clearly all respects in which the commission's findings or order are erroneous.

Pacific instituted review proceedings by filing its petition alleging that the Commission, in adopting the minutes-of-use (Charleston Plan) as a basis for apportionment of B-I toll charges as provided in its order, had acted arbitrarily and capriciously and without support of substantial evidence. There was an allegation that the mileage factor should have been used by the Commission in this connec-

tion. Pacific also alleged that West Coast point-of-connection traffic was erroneously classified as independent company traffic and that the Commission's finding to that effect was not supported by substantial evidence and was made arbitrarily and capriciously.

Pacific made similar allegations with respect to the Commission's ruling concerning the digit-absorption equipment (see issue (C) in the Commission's order).

In concluding its petition for review, Pacific prayed for a stay of proceedings pendente lite and the fixing of a supersedeas bond. A writ of review was issued by the superior court.

Thereafter, West Coast filed its petition for a review of the Commission's order in relation to its rejection of the Modified Phoenix Plan. It was alleged that in this respect the Commission had acted in violation of constitutional provisions, without statutory authority or substantial evidence, and had acted arbitrarily and capriciously in the premises.

Upon stipulation of all parties who were affected by the Commission's order, the two review proceedings were consolidated for purposes of argument, briefs and hearing.

The superior court, after reading the record made before the Commission and the briefs of the several counsel appearing before the court, and listening to extended oral argument, rendered an oral opinion. The court in that opinion announced its decision to uphold the order of the Commission in all respects except the portion relating to the Charleston Plan. That portion, the court held, was adopted by the Commission without substantial evidentiary support and was entered arbitrarily and capriciously and upon a fundamentally wrong basis.

Thereafter, the trial court entered three findings of fact, six conclusions of law, and a decree, which provided that the order of the Commission was affirmed in all respects, except:

that the portion thereof requiring that complainants and respondent in said causes divide toll revenue obtained from the interexchange of intrastate toll telephone messages on a method resulting from apportion-

ment of exchange circuit plant of said complainants between intrastate B-I business and other business on the basis of relative minutes of use be, and the same is hereby, reversed.

The operation and effect of the Commission's order was, upon stipulation of the parties, suspended until final determination of the proceeding in the superior court.

## APPEALS TO THE SUPREME COURT

General has appealed to this court from the above quoted portion of the decree which reversed the portion of the Commission's order which approved the Charleston Plan.

The Commission has joined in General's appeal.

West coast has appealed from the same portion of the decree and from two other portions thereof, the specific issues appealed from being described in its notice of appeal as follows:

(1) Reversal of the trial court of the Commission's Order pertaining to the method of apportionment of exchange circuit plant (the Charleston Plan).

(2) Affirmation of the trial court of the Order of the Commission pertaining to the apportionment of the interexchange circuit plant (the Modified Phoenix Plan).[5]

(3) Failure of the Commission and the trial court to establish a reasonable rate of return.

(4) The trial court's assignment of costs against West Coast Telephone Company.

Pacific has appealed from two portions of the decree affirming the Commission's order, and in its notice of appeal states:

Specifically, and for clarification, this appellant, Pacific Northwest Bell Telephone Company, states that it appeals to said Supreme Court from said portions of said Decree insofar as said portions affirm, and fail to reverse, those certain portions of the Order of said Washington Utilities and Transportation Commission entered on November 22, 1961, in said Commission's Cause Nos. U-9208 and U-9224, set forth in paragraphs numbered XII and

---

[5] As noted above, in footnote 4, West Coast has specifically abandoned this assignment.

XIV of this appellant's Petition for Writ of Review and for Supersedeas filed in the above-entitled court in Case No. 33607, which two paragraphs of said petition are hereby incorporated herein by this reference.

Thus we have before us four appeals from the superior court's decree, each of the four parties being aggrieved by certain portions thereof.

RCW 80.04.190, relating to such appeals, has been quoted above.

Furthermore, earlier in this opinion, we referred to several of our prior decisions in which we discussed the functions of the courts in reviewing orders of the Commission.

We should also have in mind the provisions of RCW 80-.04.430, relating to the burden of proof in review proceedings, which provides:

> Whenever the commission has issued or promulgated any order or rule, in any writ of review brought by a public service company to determine the reasonableness of such order or rule, the findings of fact made by the commission shall be prima facie correct, and the burden shall be upon said public service company to establish the order or rule to be unreasonable or unlawful.

The present proceeding is preliminary to the Commission's principal function, which is to establish rates for telephone service which are found to be fair, just, and reasonable to the user, and sufficient to provide reasonable compensation to the utility for the service rendered. See RCW 80.36.080 and 140.

The Commission, in its order, pointed out that the division of revenues is inextricably related to the rate-making process. Thus the real parties in interest in this case are all the users of telephone service in the state of Washington who will have to pay the rates ultimately established for such service.

The proceeding now before us was instituted pursuant to RCW 80.36.160, reading as follows:

> In order to provide toll telephone service where no such service is available, or to promote the most expeditious handling or most direct routing of toll messages and

conversations, or to prevent arbitrary or unreasonable practices which may result in the failure to utilize the toll facilities of all telephone companies equitably and effectively, the commission may, on its own motion, or upon complaint, notwithstanding any contract or arrangement between telephone companies, investigate, ascertain and, after hearing, by order (1) require the construction and maintenance of suitable connections between telephone lines for the transfer of messages and conversations at a common point or points and, if the companies affected fail to agree on the proportion of the cost thereof to be borne by each such company, prescribe said proportion of cost to be borne by each; and/or (2) prescribe the routing of toll messages and conversations over such connections and the practices and regulations to be followed with respect to such routing; and/or (3) establish reasonable joint rates or charges by or over said lines and connections and just, reasonable and equitable divisions thereof as between the telephone companies participating therein.

This section shall not be construed as conferring on the commission jurisdiction, supervision or control of the rates, service or facilities of any mutual, cooperative or farmer line company or association, except for the purpose of carrying out the provisions of this section.

With these statutory provisions and court decisions in mind, we proceed to a consideration of the principal issue raised on General's appeal (in which the Commission and West Coast joined), which is whether the superior court erred in reversing that portion of the Commission's order approving the Charleston Plan because it held that that portion of the order was adopted without substantial evidentiary support and was entered arbitrarily and capriciously and upon a fundamentally wrong basis.

In its oral decision, the superior court said, with regard to the Charleston Plan:

This, of course, brings us to the Charleston Plan, which as I said before is simply an amendment of prior NARUC Separations Manuals, and obviously the quoted Order part was drawn with those provisions of the NARUC Manual in mind, specifically the Charleston Plan, and so that explains why Counsel have devoted a considerable portion of time to the Charleston Plan.

The factor of use is the concept fundamental to the NARUC Manual. Where properly applied the Manual assumes that the use of exchange circuit plant and the expenses related thereto are equal with respect to toll business interchanged, and as between the telephone companies so interchanging toll business, that is, a ratio of one to one. Pacific challenged this ratio and asserted that the ratio was at least two to one, that is, that at least twice as much exchange circuit plant mileage was used in making an exchange call as was used in making a toll call. The proof tended to show for a recent year that the actual ratios were, for General, 2.28 miles for an exchange call to one mile for a toll call, and for West Coast, 2.69 miles for an exchange call to one mile for a toll call. The proof demonstrated the enormity of the error if a ratio of one to one is used.

The determination of the Commission with respect to this matter is without substantial support in the record. It is established that the ratio of one to one is grossly in error. Therefore, under the rules previously stated, it is entered in disregard of the rights of the parties upon a fundamentally wrong basis and is arbitrary and capricious. The portion of the Commission Order quoted above will be set aside.

The portion of the Commission's findings relating to this issue has been previously quoted in this opinion.

Pacific strenuously opposed the Charleston Plan before the Commission, and contended that minutes-of-toll conversations were not a proper basis for the division of toll charges and that a mileage factor should be included. Pacific further introduced evidence of a study made by its engineers which purported to show that, instead of there being a 1 to 1 mileage ratio on B-I toll calls (as assumed by the Charleston Plan), the actual ratio exceeded 2 to 1 as to General's and West Coast's business.

At the hearing before the superior court, Pacific's counsel stated, regarding the study made by it relating to mileage, as follows:

Now, of course, we wanted to test the validity of that assumption as applied to the facts of the case here, and we did so by making the study that is discussed at such great length in the record and briefs concerning the

study of the use of these subscriber loops. The studies show that this ratio in the West Coast Exchange was 2.69 miles for exchange in making local calls to 1 mile of exchange circuit plant used in making toll calls, and in the General Company's testimony the ratio was 2.28 for exchange to 1 for toll.

Now, there have been lots of rocks thrown at that study, and I will not discuss it in any detail here. The Commission has rejected the study, and I supposed that that would be within the right of the Commission. I think there is enough conflict in the evidence on the study so Your Honor can say that this was a disputed question of fact and that the Commission has chosen not to follow the position of Pacific Company on it and rejected the study, and I have some considerable doubt as to whether Your Honor would be in a position to say that the Commission erred in rejecting that study, just in so many words, but let's leave the study out then for the moment. The fact remains, however, that nobody else made any study at all, and the real point then is that the Commission in prescribing Charleston has perforce adopted this mileage equality assumption when there is absolutely no evidence in the record to warrant it; nothing in the record at all to warrant the equality of mileage assumption that underlies the Charleston Plan, and that the Commission, I take it, cannot do when we object to it, and that, of course, is one distinction.

. . . .

The whole point then of our review proceeding in this matter so far as Charleston is concerned is that in seeking to force the Pacific Company to use the Charleston method for separating exchange circuit plant for the purpose of ascertaining the costs of General and West Coast for settlement purposes, that the Commission has prescribed a method which is, first, unlawful because it ignores the actual use principle that the Courts have laid down for use in separation, and, secondly, it has no support in any evidence that is in this record at all, and, in fact, no support in the facts of the case.

Now, that is in substance my position on the Charleston issue.

General and the Commission argue, in support of their appeal from the portion of the superior court's decree reversing that part of the Commission's order which approved

the Charleston Plan, that there was substantial evidence in the record to support the Commission's order. Parenthetically, we should state at this point that the burden of proof of showing that there was no evidence to support the Commission's order is, by statute, upon Pacific notwithstanding the trial court's decree.

At the outset, we should make it clear that neither this court nor the superior court may substitute its judgment for that of the Commission as to the merit (or lack thereof) of the Charleston Plan. The appropriateness of the Plan is a question of fact and not of law.

One of the earliest cases involving rate separations was the Minnesota rate cases (*Simpson v. Shepard*, 230 U. S. 352, 57 L.Ed. 1511, 33 Sup. Ct. 729 (1913)), in which the Supreme Court said:

> When rates are in controversy, it would seem to be necessary to find a basis for a division of the total value of the property independently of revenue, and this must be found in the use that is made of the property. That is, there should be assigned to each business, that proportion of the total value of the property which will correspond to the extent of its employment in that business. It is said that this is extremely difficult; in particular, because of the necessity for making a division between the passenger and freight business and the obvious lack of correspondence between ton-miles and passenger-miles. It does not appear, however, that these are the only units available for such a division; and it would seem that, after assigning to the passenger and freight departments respectively, the property exclusively used in each, comparable use-units might be found which would afford the basis for a reasonable division with respect to property used in common. It is suggested that other methods of calculation would be equally unfavorable to the state rates, but this we cannot assume. (p. 461.)

As stated more recently by the Supreme Court in *Colorado Interstate Gas Co. v. Federal Power Comm'n*, 324 U. S. 581, 89 L. Ed. 1206, 65 Sup. Ct. 829 (1945), regarding a separation formula adopted by the Commission and the scope of court review:

Rate-making is essentially a legislative function. *Munn v. Illinois,* 94 U. S. 113. Congress, to be sure, has provided for judicial review of the Commission's orders. § 19. But that review is limited to keeping the Commission within the bounds which Congress has created. When Congress, as here, fails to provide a formula for the Commission to follow, courts are not warranted in rejecting the one which the Commission employs unless it plainly contravenes the statutory scheme of regulation. If Congress had prescribed a formula it would be the duty of the Commission to follow it. But we cannot say that under the Natural Gas Act the Commission can employ only one allocation formula and that that formula must entail a segregation of property. A separation of properties is merely a step in the determination of costs properly allocable to the various classes of services rendered by a utility. But where, as here, several classes of services have a common use of the same property, difficulties of separation are obvious. Allocation of costs is not a matter for the slide-rule. It involves judgment on a myriad of facts. It has no claim to an exact science. Hamilton, Cost as a Standard for Price, 4 Law & Cont. Prob. 321. But neither does the separation of properties which are not in fact separable because they function as an integrated whole. Mr. Justice Brandeis, speaking for the Court in *Groesbeck v. Duluth, S. S. & A. R. Co.,* 250 U. S. 607 614-615, noted that "it is much easier to reject formulas presented as being misleading than to find one apparently adequate." Under this Act the appropriateness of the formula employed by the Commission in a given case raises questions of fact, not of law. (p. 589.)

Appellants General and the Commission cite as the only decision of a court of last resort relating to the Charleston Plan, the case of *Ohio Bell Tel. Co. v. Public Util. Comm'n,* 173 Ohio 512, 184 N.E.2d 88 (1962), in which the Commission, after extensive hearings, had prescribed a joint rate schedule for intrastate B-I toll service based on minutes-of-use and had rejected the mileage factor. After stating succinctly the substance of the Commission's findings, the Ohio Supreme Court disposed of the controversy in the following Per Curiam opinion:

Appellant contends that the order of the commission is unlawful, unreasonable, not supported by any evidence,

manifestly against the weight of the evidence, and prejudicial to appellant.

Ordinarily this court will not substitute its judgment on questions of fact for that of the commission. . . . [Citations omitted.]

It does not appear from an examination of the record that the order of the commission is against the manifest weight of the evidence or is otherwise unlawful or unreasonable. The order is, therefore, affirmed. (p. 514.)

This decision was unanimous, except that one judge concurred therein for certain reasons stated in the Commission's opinion.

The history of the various studies made by the FCC and NARUC between 1941 and 1957 regarding separation methods are described in the "Foreward" contained in the 1957 Separations Manual (which is exhibit No. 11). Reference is made therein to the decision of the United States Supreme Court in *Smith v. Illinois Bell Tel. Co.*, 282 U. S. 133, 149, 75 L. Ed. 255, 51 Sup. Ct. 65 (1930), which involved the separation (for rate-making purposes) of telephone properties used in both intrastate and interstate operations. In that case, the court stated:

The court found that the Illinois Company owns and operates all the property in the City of Chicago used in interstate calls and connects with the property owned by the American Company at the city limits. In the method used by the Illinois Company in separating its interstate and intrastate business, for the purpose of the computations which were submitted to the court, what is called exchange property, that is, the property used at the subscriber's station and from that station to the toll switchboard, or to the toll trunk lines, was attributed entirely to the intrastate service. This method was adopted as a matter of convenience, in view of the practical difficulty of dividing the property between the interstate and intrastate services. The appellants insist that this method is erroneous, and they point to the indisputable fact that the subscriber's station, and the other facilities of the Illinois Company which are used in connecting with the long distance toll board, are employed in the interstate transmission and reception of messages. While the difficulty in making an exact apportionment of the

property is apparent, and extreme nicety is not required, only reasonable measures being essential (*Rowland v. Boyle*, 224 U. S. 106, 108; *Groesbeck v. Duluth South Shore & Atlantic Railway*, 250 U. S. 607, 614) it is quite another matter to ignore altogether the actual uses to which the property is put. It is obvious that, unless an apportionment is made, the intrastate service to which the exchange property is allocated will bear an undue burden—to what extent is a matter of controversy. We think that this subject requires further consideration, to the end that by some practical method the different uses of the property may be recognized and the return properly attributable to the intrastate service may be ascertained accordingly.

The principal features of the Charleston Plan are described in detail in Exhibit 11 and also in the Commission's findings hereinbefore quoted. We are here concerned only with Pacific's contention that there was *no* evidence before the Commission to support its finding approving the Charleston Plan.

Parenthetically, it should be pointed out that in the first of two proceedings before the California Public Utilities Commission, Pacific's predecessor in interest, Pacific Telephone & Telegraph Company, a California corporation, agreed to the separation procedures set forth in the 1947 Manual (as amended in 1952) regarding separation of intrastate and interstate use of jointly used plant. In the second proceeding, that company contended that the separation should be made on the basis of relative message-*mile*-minutes of use instead of the basis previously agreed to (message-minutes of use). These cases are: *Re Pacific Tel. & Tel. Co.*, 5 P.U.R.3d 396 (1954); *Re Pacific Tel. & Tel. Co.*, 23 P.U.R.3d 209 (1958).

In the second case, the Commission stated in its decision, at page 228:

Applicant contends that the separation of category A plant (outside plant used for subscriber lines, interlocal trunks, toll connecting and number checking trunks, and station equipment) should be made on the basis of relative message-*mile*-minutes of use rather than on message-minutes of use. The latter is prescribed in the manual

for jurisdictional separations. In the sense that applicant's method follows the manual in certain instances and departs therefrom in others, applicant has produced a hybrid separations method. In our opinion it has no merit. In addition, it is contrary to this commission's earlier finding that "the separation of category A exchange plant between intrastate toll and exchange on the basis of message-minutes of use for each service is reasonable so long as the same basis is used for the separation of category A exchange plant between interstate and intrastate operations" and the commission's directive that "[f]uture reports of separated intrastate operating results required of applicant by this commission should be prepared in accordance with this finding."

The subject of separations has many facets and has received the most careful consideration of this commission. There is no evidence in this proceeding which leads this commission to revise its former findings in the slightest respect. We fully expect applicant to adhere to the principles enunciated in the decisions of the commission.

Another case before the Washington Commission in which Pacific's predecessor was applying for a general increase in intrastate rates (which involved the separation of intrastate and interstate telephone revenues) is *Washington Pub. Serv. Comm'n v. Pacific Tel. & Tel. Co.,* 25 P.U.R.3d 18 (1958), where this same problem and the use of the 1957 Manual are discussed at length. At pages 24-25, the Commission stated:

To arrive at some reasonable allocation of its total investment and expenses between inter and intrastate operations, Pacific employed the procedures and principles set forth in the revised separations manual as implemented by detailed instructions prepared by the American Telephone and Telegraph Company.

The manual originated as a 1942 report prepared by a committee composed of Federal Communications Commission and state commission representatives working jointly with representatives of the American Telephone and Telegraph Company. The state members of the committee approved the report and recommended its adoption by the Federal Communications Commission. Subsequently, June, 1942, the FCC instituted a proceeding or investigation to determine whether the separation

procedure so recommended should be adopted. This investigation is still pending.

In 1947, a similarly composed committee revised the proposed separation procedures. The revised procedures were then published by the National Association of Railroad and Utilities Commissioners as the first separations manual. A 1952 revision, the Charleston Plan, was issued by the NARUC and approved by the FCC for acceptance on an interim basis. Subsequently, the 1956 revision, known as the Modified Phoenix Plan, was issued by the NARUC. Each of the revisions for our purposes has resulted in additional assignments of investment and expenses to interstate operations. The manual is in general use by the Bell operating companies.

For purposes of the allocation of investment, the manual divides telephone plant into three main categories; exchange plant, toll central office equipment, and toll circuit plant. Exchange plant, which includes dial central office equipment, outside lines, and telephones, is allocated according to minutes of use. Toll central office equipment and local manual central office equipment are allocated on the basis of traffic units, a measurement of work time in handling calls. Toll circuit or interexchange lines are allocated according to relative state of Washington message-mile-minutes, which takes into account the minutes the toll lines are used and the distance the calls travel.

While recognizing that there was dire need for improvements in the Manual, the Commission concluded its discussion by saying:

We still are unable to see any logical reason why such great disparity should exist between the cost of intrastate and interstate toll messages for the same or similar distances.

We have and we shall continue to consider recommendations for improvements in or modifications to the manual. Moreover, we shall concertedly initiate measures and procedures looking toward a more realistic allowance of intrastate plant and expenses.

On the record now before us from which we must decide this rate proceeding, we shall adhere to the use of the Separations Manual as revised.

We now turn to a consideration of Pacific's arguments in support of that portion of the superior court's decree (above quoted) which reversed the Commission's order requiring the division of toll revenue derived from intrastate toll messages on the basis of relative minutes of use.

Pacific, in its brief, discusses the Charleston Plan at length, and contends that it was intended to apply only to interstate (jurisdictional) separations. It is further argued that, in intrastate separations, consideration of a mileage factor is essential in addition to the minutes of use.

A study of such mileage factor prepared by Pacific was presented to the Commission, but the Commission ignored it in its deliberations. This study tended to show that the actual mileage ratio exceeded by more than 2 to 1 the assumed ratio of 1 to 1 inherent in the Charleston Plan. Pacific's basic contention is that there was *no* evidence to support a 1 to 1 ratio, and that Pacific's study should have been favorably considered by the Commission.

The questions raised by these contentions were, under the cases hereinbefore cited, questions of fact. The Commission made extensive findings (quoted above) as to these matters. Neither the superior court nor this court has authority to overturn or modify such findings except where the Commission has acted arbitrarily or proceeded upon a fundamentally wrong basis.

The contention of Pacific is that the findings just discussed are not supported by *any* evidence presented to the Commission. We have examined the testimony and exhibits relating to the Charleston Plan and the other matters discussed in Pacific's brief, and find that there is substantial evidence (as compared to a scintilla) which supports the Commission's findings as to these matters.

Furthermore, the matters which were before the Commission for decision in this proceeding involved the exercise of expert judgment by those who have informed knowledge regarding existing conditions within the telephone industry. Only the Commission has available to it such expert knowledge of problems of telephonic communica-

tions as to enable it to approve or reject various separations procedures on the basis of an informed judgment.

Thus, our functions on this appeal are strictly limited to the specific questions mentioned in *State ex rel. Pacific Tel. & Tel. Co. v. Department of Pub. Serv.*, 19 Wn.2d 200, 142 P.2d 498, and other decisions above cited.

Since we have found, from our examination of the record before the Commission, that there was evidence to support its findings and order relating to its approval of the Charleston Plan, we must reverse that portion of the superior court's decree which had reversed the aforesaid parts of the Commission's findings and order, and direct that court to change its decree so as to affirm them.

This disposes of the appeals of General, West Coast, and the Commission relating to the Charleston Plan issue.

Next, we consider Pacific's appeal from that portion of the superior court's decree which affirmed the Commission's findings and order relating to local digit-absorbing equipment. This issue is described as (C) in the Commission's findings and has been quoted in full above.

Pacific contends that seven digit numbers are assigned to each telephone to make possible the completion of inward toll calls (nationwide), but admits that in small exchanges local calls can be made by dialing the last five digits only. However, to avoid confusion, telephone users are told to dial all seven numbers on local calls.

The issue presented to the Commission was whether the costs connected with the local digit-absorbing equipment were properly chargeable to toll or to local operations. Pacific argued for the latter allocation, and two independent companies argued for the former.

The Commission ruled in favor of the independents and the superior court affirmed its findings and order regarding this issue.[6]

Under the authorities above cited regarding the functions of the courts in such situations, we cannot substitute

[6]Pacific states in its brief (p. 85) that the Commissions of Florida, Kentucky, and Ohio have each ruled in favor of General on this issue.

our judgment for that of the Commission even if we were inclined to disagree with its decision.

Since there is no showing that the Commission acted arbitrarily or proceeded on a fundamentally wrong basis in arriving at its decision, and there being substantial evidence to support its decision, the decree of the superior court, in so far as it affirms the Commission's action with regard to the digit-absorbing equipment, must be affirmed.

The remaining issue raised on Pacific's appeal relates to what is called "point-of-connection" traffic. This issue is described in the Commission's findings as (E) and is quoted above. It is a controversy between West Coast and Pacific (General is not involved).

Point-of-connection traffic is a term used by West Coast and Pacific to identify certain toll traffic interchanged between them which uses facilities controlled by West Coast (either owned by West Coast or leased by Pacific). The tariffs applicable are filed by West Coast and have been approved by Pacific.

The Commission's brief states its position on this phase of the case as follows:

> Further detailed discussion of the nature and historical development of this type of traffic is unnecessary. The contentions that might be made with regard to particular methods by which division of revenue should be made concerning this traffic are beside the point. The commission did not determine how such division of revenue should be accomplished. The commission did not rule that such division of revenue must be made in any particular manner. The commission did not state that Pacific is under obligation to settle on the same basis that it has previously agreed to nor did the commission state that such prior methods of settlement are now reasonable and must be followed. The commission merely held that such traffic is not B-I traffic and that since this proceeding was concerned primarily with B-I traffic, it left for separate negotiations the method to be applied in effecting a division of revenue thereon.

Pacific contends that this point-of-connection traffic should be included with all other interchanged traffic in a cost-study type of settlement. West Coast disagreed, and

the Commission ruled that this was not B-I traffic but rather the reverse of it, and left the matter of division for separate negotiation by the two parties. In brief, the Commission did not render a final decision on that issue, saying that it would not disturb "the historical relationship between the two companies."

The superior court affirmed the Commission's findings and order as to this item, saying, in its oral decision, that there was evidence on this issue to support a decision either way, but that, "We are not permitted to substitute our solution of the matter for that made by the Commission."

Under the decisions hereinbefore cited in our discussion of the Charleston Plan issue, the superior court was correct; and the same rule is binding on this court. Consequently, the portion of the superior court's decree relating to this matter must be affirmed.

What has been said disposes of all assignments of error asserted by each of the four appellants, except West Coast's assignments No. 6 and No. 7.

Assignment No. 6 asserts that the court erred in charging it for the cost of the transcript on appeal. There is no merit to this assignment. RCW 80.04.170 authorizes this procedure. See *Taylor-Edwards Warehouse & Transfer Co. v. Department of Pub. Serv.*, 22 Wn.2d 565, 157 P.2d 309 (1945).

■ In assignment No. 7, West Coast contends that the court erred in refusing to order the Commission to determine a fair rate of return to be used in the determination of West Coast's share of revenues from B-I interchanged toll revenues. The trial court found that there was *no evidence* before the Commission on which it could have based a finding of a fair rate of return. Whether the Commission shall proceed to determine the fair rate of return by gathering evidence on its own motion is a decision within the discretion of the Commission. See *State ex rel. Seattle v. Public Serv. Comm'n*, 76 Wash. 492, 136 Pac. 850 (1913). We think there is no merit in this assignment, in view of the above case.

## Conclusion

The Commission's order directed the parties to divide toll revenues obtained from the interchange of intrastate toll telephone messages in accordance with its findings, and also directed them to proceed with further negotiations regarding the rate of return to be allowed General and West Coast on B-I operations for toll settlement purposes and to report the results thereof to the Commission within 90 days from the effective date of its order. The Commission retained jurisdiction of the proceedings to effectuate the provisions of the order.

Having reviewed the proceedings before the Commission relating to the several matters presented to us by the four appeals from the decree of the superior court entered in the two review proceedings, our disposition of these appeals is as follows:

1. The decree of the superior court in so far as it reversed the findings and order of the Commission is reversed with directions to change its decree so as to affirm the Commission's findings and order.

2. In all other respects, the decree of the superior court is affirmed.

3. The 90-day period prescribed in the Commission's order for reporting the results of further negotiations between the parties shall commence upon the entry of the revised decree by the superior court.

It is so ordered.

WEAVER, OTT, and HAMILTON, JJ., and JOHNSON, J. Pro Tem., concur.

---

September 20, 1965. Petition for rehearing denied.